Timothy M. Cook, Petitioner *v.* Commonwealth of Pennsylvania, Bureau of Vocational Rehabilitation of the Department of Labor and Industry, Respondent.

Argued June 4, 1979, before Judges WILKINSON, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*Frank J. Laski,* with him *Edward A. Stutman,* for petitioner.

*Robert E. Kelly,* Deputy Attorney General, with him *Norman J. Watkins,* Deputy Attorney General, and *Gerald Gornish,* Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, September 5, 1979:

Timothy M. Cook (Petitioner) brings this appeal from an order of the Bureau of Vocational Rehabilitation of the Department of Labor and Industry (BVR) denying him vocational rehabilitation assistance in the form of financial aid for tuition, room and board, and other related expenses incurred while he was enrolled in law school.[1]

---

[1] BVR did supply Petitioner with orthopedic shoes and counseling and placement services while he was a law student. He fi-

Petitioner was born with hemophilia, a condition of the circulatory system characterized by delayed clotting of the blood and difficulty in controlling hemorrhage. As a result of hemorrhages during his growth years, Petitioner lost nearly all of the motion in his knees and ankles. Due to Petitioner's crippling disability, he was found to be eligible for rehabilitative support from BVR. After extensive diagnostic studies, Petitioner was afforded numerous physical restorative services including orthopedic surgery, blood transfusions, braces, and orthopedic shoes. Petitioner also was afforded educational rehabilitative support resulting in his earning a Bachelor of Arts degree in Political Science from the University of Pennsylvania in 1975.

Following his college graduation, Petitioner entered the University of Pennsylvania School of Law. He again turned to BVR in search of funds for his education. Petitioner was told in 1975 that he was ineligible for such assistance. In 1977, he again requested rehabilitative services while he was in law school. Petitioner's request was denied at the Bureau level on the basis that he was employable within the terms of the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.*, (Rehabilitation Act) and therefore, was not in need of further training. Petitioner appealed this decision to a "first level administrative review," the result of which was an affirmation of the Bureau's decision. A "second level administrative review" produced the same result. Petitioner finally requested and received a fair hearing before a fair hearing panel which concluded that appropriate and sufficient train-

nanced his own law school tuition, room and board, and related expenses, however, through a combination of scholarships, educational and personal loans, and earnings from two part-time jobs, one as a dormitory counselor at the University of Pennsylvania and another with the Public Issue Law Center.

418

ing services had been provided to Petitioner and that the denial of benefits was consistent with federal and state rules, regulations and procedures. Petitioner is here on appeal from the decision rendered after the fair hearing.

Petitioner raises four issues for our review:

I. Whether BVR's practice of refusing to provide post baccalaureate degree training to otherwise qualified individuals is invalid as a regulation because it was not promulgated pursuant to the Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §1102 *et seq.* (Commonwealth Documents Law);[2]

II. Whether BVR's denial of law school assistance to Petitioner violated the Rehabilitation Act of 1973;

III. Whether BVR's denial of law school assistance to Petitioner violated the Vocational Rehabilitation Act of one thousand nine hundred forty-five, Act of May 22, 1945, P.L. 849, *as amended,* 43 P.S. §681.1 *et seq.* (PRA);

IV. Whether BVR's denial of law school assistance to Petitioner violated his right to equal protection under the Pennsylvania[3] and United States[4] Constitutions.

---

[2] Effective September 9, 1976, parts of the Act of July 31, 1968 were repealed by Section 7 of the Act of July 9, 1976, P.L. 877. Other parts were left intact, 45 P.S. §1102 *et seq.* Section 1 of the Act of July 9, 1976 served to codify certain provisions of the law relating to the publication and effectiveness of Commonwealth documents, 45 Pa. C.S. §501 *et seq.* There are a number of similarities between the remaining provisions of the Act of July 31, 1968 and those of Section 1 of the Act of July 9, 1976. The provision at issue here, Section 413.022 of the BVR Procedures Manual, was adopted in October, 1971. It, therefore, was controlled by the 1968 Act.

[3] Pa. Const. art. I, §1.

[4] U.S. Const. amend. XIV, §1.

For the reasons which follow, we reverse the order of BVR and remand this case for proceedings consistent with this opinion.

## I. The Commonwealth Documents Law

Petitioner contends that BVR has a policy of refusing to grant educational assistance to anyone beyond the baccalaureate degree level. He further contends that BVR's "policy" is, in reality, a regulation and that since it was not promulgated pursuant to the requirements of the Commonwealth Documents Law, 45 P.S. §1102 et seq., it cannot be applied to the facts of this case. We find it unnecessary to address the merits of Petitioner's claim.

Our review of the record indicates that while there did occur discussion at the various hearings below concerning the alleged BVR policy or regulation and while statements were made that such a policy would be binding at all stages of administrative review previously afforded Petitioner, it also is clear from the record that BVR's decision here was not based on such a policy or regulation. Instead, regardless of any such policy, BVR found Petitioner ineligible for further services because he was deemed to be employable within the terms of the Rehabilitation Act of 1973. It is, therefore, unnecessary for us to review the alleged policy or regulation, and we turn our attention to the Rehabilitation Act of 1973.

## II. The Rehabilitation Act of 1973[5]

The Rehabilitation Act of 1973 authorizes federal grants to states to assist the states in providing vocational rehabilitation service to the handicapped.

---

[5] The Rehabilitation Act of 1973, 29 U.S.C. §701 et seq., was amended in December, 1974 and in November, 1978. For the purposes of this appeal, we apply the Act as it existed prior to the 1978 amendments.

State participation in the program is voluntary, but if a state chooses to participate it must comply with federal guidelines and regulations governing the Act. *See Florida Department of Health and Rehabilitative Services v. Califano,* 449 F. Supp. 274, 276-77 (N.D. Fla.), *aff'd per curiam* 585 F.2d 150 (5th Cir. 1978). The purpose of the Rehabilitation Act in general, is, *inter alia,*

> (1) [to] develop and implement comprehensive and continuing State plans for meeting the current and future needs for providing vocational rehabilitation services to handicapped individuals and to provide such services for the benefit of such individuals, serving first those with the most severe handicaps, so that they *may prepare for and engage in gainful employment.*

29 U.S.C. §701(1). (Emphasis added.) The purpose of Title I of the Act, that section which outlines state rehabilitation programs, is "(a) . . . to authorize grants to assist States to meet the current and future needs of handicapped individuals, so that such individuals *may prepare for and engage in gainful employment to the extent of their capabilities.*" 29 U.S.C. §720(a). (Emphasis added.)

The question we must address is whether BVR violated the provisions of the Rehabilitation Act when it refused to authorize payment for Petitioner's law school education. BVR argues that it did not violate the Act because Petitioner was ineligible for further educational assistance. Petitioner disagrees.

"Eligibility" when used in relation to an individual's qualification for vocational rehabilitation services is defined by regulations implementing the Rehabilitation Act as a certification that:

> (1) The individual has a physical or mental disability which for such individual consti-

tutes or results in a substantial handicap to employment; and

> (2) Vocational rehabilitation services may reasonably be expected to benefit the individual in terms of employability.

45 C.F.R. §1361.1(f). *See also* 45 C.F.R. §1361.33 and 29 U.S.C. §706(6). "Employability" is defined as

> a determination that the provision of vocational rehabilitation services is likely to enable an individual to enter or retain employment *consistent with his capacities and abilities* in the competitive labor market; the practice of a profession; self-employment; . . . or other gainful work. (Emphasis added.)

45 C.F.R. §1361.1(g). "Substantial handicap to employment" means

> a physical or mental disability . . . imped[ing] an individual's occupational performance, by preventing his obtaining, retaining, or preparing for employment *consistent with his capacities and abilities*. (Emphasis added.)

45 C.F.R. §1361.1(bb).

There is no doubt that Petitioner has a physical disability resulting in a substantial handicap to his employment. In fact, as defined by 45 C.F.R. §1361.1 (w), Petitioner is a *severely* handicapped individual.[6] The remaining question, then, is whether further vocational rehabilitative services can reasonably be expected to benefit Petitioner in terms of employability.[7]

---

[6] The Rehabilitation Act makes providing assistance to the severely handicapped a first priority in the overall administration of the Act. *See* Section 2, 29 U.S.C. §701(1).

[7] In its brief, BVR argues that Petitioner claims BVR should provide assistance to him until he achieves his "maximum vocational potential." It is true that summaries of earlier proceedings show that Petitioner did refer to "maximum vocational potential." On

BVR argues that, with a B.A. in Political Science from the University of Pennsylvania, Petitioner was employable. Petitioner concedes that he was capable of finding employment with his undergraduate degree.[8] He argues, however, that the Rehabilitation Act guarantees him the right to be trained to enter employment "consistent with his capacities and abilities" and that since he has the capacity and the ability (coupled with the desire) to be an attorney, BVR should pay for his law school education. Indeed, both BVR and Petitioner may be making the same argument legally and disagreeing only factually; that is, BVR may be arguing that further vocational rehabilitation services may not reasonably be expected to benefit Petitioner in terms of employability because he is already able to enter into employment consistent with his capacities

---

appeal, however, Petitioner has argued only that BVR is obliged to help him to enter or retain employment "consistent with his capacities and abilities." This latter standard is the one which should be applied in a case such as this and is the one which we will review here.

[8] BVR argues that Petitioner conceded below that he was employable without a law degree. The record states that at the first level administrative review "Mr. Cook further discussed that he did possess the potential of getting a permanent job similar to his summer employment with the Department of Agriculture that would be consistent with his capabilities, . . . ." Although there is arguable merit in BVR's contention that this statement is a concession by Petitioner as to his employability, we decline to accept it as such. It must be remembered that this statement is taken from a *summary* of the administrative review proceedings. Since we have no verbatim transcript of the hearing and since Petitioner was not represented by counsel at the hearing, we decline to decide this case on the basis of his alleged statement.

Contrary to BVR's argument, Petitioner did not concede his employability at the fair hearing. There, the summary of the proceedings indicates that Petitioner "was willing to stipulate that he could get a job with his baccalaureate degree." Ability to be employed at any job is not to be equated with the definition of employability found in the federal regulations.

and abilities. Unfortunately, it is impossible on this record to determine who is correct.

First, we note that the proceedings below were not conducted in compliance with the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.1 *et seq.* (AAL).[9] Section 51 of the AAL, 71 P.S. §1710.51(a)(37), clearly made the Act's provisions applicable to BVR proceedings. Section 31 of the AAL, 71 P.S. §1710.31, entitled Petitioner to certain procedural rights:

> No adjudication shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. *All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings.* (Emphasis added.)

There is no doubt that Petitioner received notice of and the opportunity to be heard at the hearings. There exists, however, no full and complete record of the proceedings.[10] In order to render a decision involving a factual issue, such as the one before us, we need the full and complete record contemplated by Section 31 of the AAL. As will be discussed, *infra,* each party here was required to prove certain facts and to meet a certain burden of proof. The state of

---

[9] The Act of June 4, 1945 was repealed, effective June 27, 1978, by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a) [1244]. Materially indentical provisions, still referred to as the Administrative Agency Law, are now found at 2 Pa. C.S. §§501-508, 701-704.

[10] All of the proceedings below were extremely informal. The record contains summaries of statements given by various participants in the administrative level reviews and the fair hearing, but there is no accurate transcript of the testimony given, nor is there any indication that any of the statements made by the participants were given under oath. Petitioner was not represented by counsel prior to this appeal.

the record at this time precludes us from determining what has been proved and which party, if either, has met its burden of proof.

Secondly, nowhere on the record does there appear the individualized written rehabilitation plan which is required by Section 101 of the Rehabilitation Act, 29 U.S.C. §721, in the case of each handicapped individual who seeks rehabilitative assistance. The purpose of such a written plan is to ensure that services afforded by the states to handicapped individuals are responsive to the particular needs of each individual applicant. *See Scott v. Parham*, 422 F. Supp. 111, 113. (N.D. Ga. 1976).

Of major importance in the written program is the specification of reasons for a determination of ineligibility for assistance. Section 102 of the Rehabilitation Act, 29 U.S.C. §722(c), provides that:

> (c) The Secretary shall also insure that (1) in making any determination of ineligibility referred to in subsection (a) of this section, or in developing and carrying out the individualized written rehabilitation program required by section 721 of this title in the case of each handicapped individual, emphasis is placed upon the determination and achievement of a vocational goal for such individual, (2) a decision that such an individual is not capable of achieving such a goal and thus not eligible for vocational rehabilitation services provided with assistance under this part, is made only in full consultation with such individual (or, in appropriate cases, his parents or guardians), and only upon the certification, as an amendment to such written program, or as a part of the specification of reasons for an ineligibility determination, as appropriate, that the preliminary diagnosis or

evaluation or rehabilitation potential, as appropriate, has demonstrated beyond any reasonable doubt that such individual is not then capable of achieving such a goal, and (3) any such decision, as an amendment to such written program, shall be reviewed at least annually in accordance with the procedure and criteria established in this section.

Both the legislative history of Section 102, 1973 U.S. Code Cong. & Adm. News 2098, and the Regulations accompanying the section, 45 C.F.R. §1361.37(c), emphasize that rehabilitative services may be denied *only* upon a determination *beyond any reasonable doubt* that the individual is ineligible for such services because the individual has no mental or physical disability constituting a substantial handicap to employment or because it has been determined *beyond any reasonable doubt* that the individual cannot be expected to benefit in terms of employability from vocational rehabilitation services. Because we have no written individualized rehabilitation plan in this case, we have no such certification of ineligibility. BVR claims that none was necessary because it did not find Petitioner ineligible to receive rehabilitative services. Indeed, it argues, BVR supplied Petitioner with orthopedic shoes and counseling and placement services so, therefore, it did not find him ineligible. Such an argument is directly contrary to the express language of Section 102. Petitioner sought a number of services from BVR. By the terms of Section 102, the refusal of BVR to grant *any* of his requests required the certification of ineligibility and an explanation of the reasons for the ineligibilty as outlined in the above cited provisions.

We find the record here to be in a strange posture. Neither Petitioner nor BVR has adduced sufficient

proof to settle the factual issue of whether Petitioner was eligible for BVR assistance for law school. Under normal circumstances, we would be tempted to dismiss Petitioner's appeal because he has failed to prove he is eligible or to sustain it because BVR failed to prove beyond a reasonable doubt that he was ineligible for assistance. Due to the facts, however, that the proceedings below were purposefully kept informal and were conducted in violation of Section 31 of the AAL, 71 P.S. §1710.31, either decision would seem to be unjust. We find, therefore, that we must remand this case for a fair hearing conducted in full compliance with the AAL[11] and directed to answering the question of whether Petitioner was eligible for rehabilitative assistance in the form of financial aid for law school.[12]

### III. *The Pennsylvania Rehabilitation Act*

Petitioner argues that in refusing to provide him with financial assistance to attend law school, BVR violated the terms of the Pennsylvania Rehabilitation Act, 43 P.S. §681.1 *et seq.* The PRA is much less detailed than the Rehabilitation Act of 1973. In fact, it appears to exist primarily to give statutory authority

---

[11] For administrative procedure requirements currently in effect, *see* 2 Pa. C.S. §504.

[12] Petitioner calls to our attention an unreported decision of the Department of Public Welfare, Office of the Visually Handicapped (OVH) involving a situation similar to the one before us here. *Appeal of Rhonda Weiss* (December 12, 1977). The hearing examiner in *Appeal of Rhonda Weiss* applied the Rehabilitation Act of 1973 and determined that Weiss was eligible for OVH assistance for her law school tuition. While we find the adjudication and order in *Appeal of Rhonda Weiss* persuasive, it is, of course, not controlling on us. We note, however, that the adjudication and order were entered following a fair hearing at which various witnesses testified under oath. Furthermore, the hearing examiner's opinion contained formal findings of fact and a lengthy discussion of the Rehabilitation Act and its application to the facts of that case. Similar procedures should be followed by BVR in rehearing this case.

for state-federal rehabilitation programs such as that provided by the Rehabilitation Act of 1973. Section 5 of the PRA, 43 P.S. §681.5, provides that:

> The State board shall cooperate, pursuant to agreements with the Federal government, in carrying out the purposes of any Federal statutes pertaining to vocational rehabilitation, and is authorized to adopt such methods of administration as are found by the Federal government to be necessary for the proper and efficient operation of such agreements or plans for vocational rehabilitation, and to comply with such conditions as may be necessary to secure the full benefits of such Federal statutes.

We find, therefore, that the challenge under the PRA to BVR's rehabilitation program shall be decided by reference to the Rehabilitation Act of 1973. We have previously held that Petitioner is entitled to assistance for his law school education if he meets the eligibility requirements of the Rehabilitation Act of 1973. Our holding is the same pursuant to the Pennsylvania Rehabilitation Act.

## IV. Equal Protection

Finally, Petitioner argues that BVR's decision to deny him financial assistance for law school constituted a denial of his equal protection rights pursuant to Article I, Section 1 of the Pennsylvania Constitution and the Fourteenth Amendment to the United States Constitution because a similarly situated individual was granted such benefits by the Office of the Visually Handicapped. We have held that Petitioner, if eligible under the terms of the Rehabilitation Act of 1973, is entitled to rehabilitative assistance for his law school expenses. Therefore, we need not reach Petitioner's equal protection argument.

428

### V. *Conclusion*

For the foregoing reasons, we reverse the order of the Bureau of Vocational Rehabilitation denying Petitioner rehabilitative assistance for his law school expenses and remand this case for a fair hearing to be conducted in a manner consistent with this opinion.

Judge WILKINSON, JR. dissents.

### ORDER

AND Now, this 5th day of September, 1979, the Order of the Department of Labor and Industry, Bureau of Vocational Rehabilitation, dated April 20, 1978, is reversed and this case is remanded for proceedings consistent with this opinion.