Mark J. Turbedsky, Petitioner *v.* Commonwealth of Pennsylvania, Department of Labor and Industry, Respondent.

Argued November 1981, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*John B. Dunn,* for petitioner.

*Daniel R. Schuckers,* Assistant Chief Counsel, with him *Jeffrey R. Miller,* Assistant Attorney General, for respondent.

OPINION BY JUDGE ROGERS, March 17, 1982:

The issue here is whether the Bureau of Vocational Rehabilitation of the Department of Labor and Industry (BVR) is required by the Rehabilitation Act of 1973, *as amended,* 29 U.S.C. §701 *et seq.* (1973) and federal regulations adopted thereunder, to provide full-time attendant care to the petitioner, Mark J. Turbedsky, who has been unconditionally accepted in BVR's vocational rehabilitation program and who contends and has introduced essentially unrefuted evidence that full-time attendant care will be reasonably expected to benefit him in terms of employability.

The petitioner is a respirator dependent quadriplegic as a result of an accident. He requires full-time attention of someone to monitor a mechanical ventilation system on which his life depends and to attend to his personal and other needs. For this reason he is now a resident at Muhlenberg Medical Center when not at his college classes with an attendant.

Prior to the accident which resulted in his injuries, the petitioner was a college student. He has since resumed his studies at Allentown College of St. Francis deSales, where he is engaged in two courses a semester. The costs of his education, including tuition, books, transportation and attendant care during his trips to and from school and while attending classes have been, and are now, provided by BVR. The petitioner is convinced that if he were able to live other than in an institution as he is now required because he does not have full-time attendant care, he could improve his progress in his college studies and consequently his employability.

Following hearings on Turbedsky's requests for unconditional (rather than his then conditional) acceptance in BVR's program and for full-time attendant care, the Secretary of the Department of Labor and Industry, acting as chairman of the State Board of

Vocational Rehabilitation, adopted the decision and order of the hearing examiner, BVR Director John Hagen, which accepted the petitioner unconditionally into BVR's vocational rehabilitation program but refused his request for full-time attendant care.

The petitioner contends that he established at the BVR hearing that the provision of a full-time attendant would improve his progress at college which would in turn enhance his employability and BVR is hence required by the Rehabilitation Act of 1973, federal regulations adopted thereunder, and by Pennsylvania's state plan as established pursuant to the federal act to provide him with full-time attendant care.

BVR counters with the contentions: (1) that BVR has no power to provide full-time attendant care because such service is not an authorized service under Title I or the Rehabilitation Act of 1973, entitled "Vocational Rehabilitation Services," but that this service is only authorized by Title VII of the Act, entitled "Comprehensive Services for Independent Living," a program in which the State of Pennsylvania has chosen not to participate; (2) that even if BVR were empowered to provide full-time attendant care as a vocational rehabilitation service, the petitioner has not shown that the provision of a full-time attendant would aid him in terms of employability, as required by the Act; and (3) that conceding for argument's sake that BVR is empowered to provide this service as a vocational rehabilitation service, and that such service would aid the petitioner in terms of employability, BVR has discretion in the allocation of its funds and may refuse the petitioner full-time attendant care simply to provide other services to other people. We reject BVR's contentions and, accepting the petitioner's, we reverse the Secretary's order refusing the petitioner's request for full-time attendant care while he pursues his college education. With respect to BVR's con-

tention that full-time attendant care is not available under Title I, we first note that at 29 U.S.C. §723, Congress has pertinently provided:

(a)   Individual services.  Vocational rehabilitation services under this act are *any* goods or *services necessary to render a handicapped individual employable, including, but not limited to, the following;*

(1)   Evaluation of rehabilitation potential. . . .

(2)   Counseling, guidance, referral and placement services . . .

(3)   Vocational and other training services . . .

(4)   Physical and mental restoration services . . .

(5)   *Maintenance, not exceeding the estimated cost of subsistence, during rehabilitation.*

(6)   Interpreter services . . .

(7)   Recruitment and training services . . .

(8)   Rehabilitation teaching services and orientation and mobility services for the blind;

(9)   Occupational licenses, tools . . .

(10)   Transportation . . .

(11)   Telecommunications, sensory and other technological aids and devices.
(Emphasis added.)

Not only does the Act authorize the provision of any service necessary to render the handicapped person employable, it specifically allows the provision of maintenance during rehabilitation. "Maintenance" is defined by regulation as

. . . payments, not exceeding the estimated cost of subsistence and provided at any time from the date of initiation of vocational rehabilitation

services through the provision of post-employment services, to cover a handicapped individual's basic living expenses, such as food, shelter, clothing and other subsistence expenses *necessary to derive the full benefit of other vocational rehabilitation services* being provided in order to achieve such individual's vocational rehabilitation objective or to enable an extended evaluation of such individual's rehabilitation potential.

45 C.F.R. §1361.1(m) (emphasis added). That maintenance includes expenses necessary to derive the full benefit of other vocational services provided is the central point of Turbedsky's thesis. His proofs demonstrated that full-time attendant care was necessary in order that he might derive the full benefit of the college education being provided him as a vocational rehabilitation service.

BVR's contention that full-time attendant care cannot be provided this Pennsylvanian accepted for its Title I vocational program because the State has chosen not to participate in Title VII's independent living program is wholly unpersuasive. Nothing in the Rehabilitation Act of 1973 prohibits the provision of allowable vocational rehabilitation services to one entitled to them by the statute and regulation under Title I because the same services might be provided under Title VII. As we have seen, one in the Title I program is entitled to maintenance defined as any services necessary to provide full benefit of the vocational rehabilitation services being rendered. In this case, these according to the undisputed record include full-time attendant care.

BVR's second point—that the provision of full-time attendant care would not aid the petitioner in terms of employability—is belied by the record as we shall see. First, however, we observe that by federal

regulation rehabilitation services (in this case full-time attendant care) may be denied by BVR only upon a determination "beyond any reasonable doubt" that they may not be reasonably expected to benefit the individual in terms of employability. 45 C.F.R. §1361.37 (c), *Cook v. Bureau of Vocational Rehabilitation*, 45 Pa. Commonwealth Ct. 415, 425, 405 A.2d 1000, 1005 (1979). *See also*, 1973 U.S. Code Cong. & Admin. News. pp. 2076, 2098. Far from making such a showing, BVR has made no contest of the petitioner's evidence. His doctor testified that his performance in college which has been difficult would improve if he did not have to spend most of the rest of his time in an institution. Dr. Bertrand Bensam, Medical Director of the New Jersey Rehabilitation Hospital, testified for the petitioner:

Q: Now, Doctor, do you see any benefit to Mark, whether it be physically, emotionally or mentally—not only just general benefits, but benefits as they relate to his employment potential, his rehabilitation potential, if he were to reside in a non-institutional setting, a private setting?

A: Only inasmuch as he would share the benefits that everybody else has been benefited. Everybody that has been in an institutional setting has done better outside of an institutional setting.

Q: Now, better—can you relate that at all to physically or emotionally or mentally?

A: Everything. Their grades have gone up, their reaction with the people around them, their interpersonal relationships have improved. Some have married. Some have been successful in various business endeavors. They take better care of themselves physically. They ask people to do the moving and what have you to

prevent breakdown of skin, because they don't want to have problems that would keep them from being active and independent. Yes, everybody I know has done better out of an institutional setting.

Q: Based on your experience, Doctor, could you make an assessment as to whether or not Mark's academic endeavors and successes would be benefited by his removal from the institutional setting into a private setting?

A: I wouldn't have been able to answer that prior to today; but, after a social visit with Mark, and in the presence of other people and some confirming evidence from other people, I have been told that Mark doesn't have a private room, and Mark has been obliged to share his rooms on occasion with people who are either not committed towards Mark's benefit or in fact, were rather depressing. One person, I am led to believe, was in the process of dying —the person died.

You would probably find it difficult to study under such circumstances. The very operations of an institution, even if you try to make it humane, are such that you have to get up at a particular time. You will only be out of bed at a particular time; and this is not necessarily to the advantage of the person who has to meet another set of requirements for a particular time, such as a college, or university or a job.

In addition, the petitioner described the rigors of studying in an institutional environment, including the sharing of a room with the terminally ill, the general lack of privacy, and the necessity of conforming to an institution's schedule.

BVR finally says that it has a broad if not full discretion concerning what services it provides to eligible

individuals. This contention finds no support in statutory or case law. The Rehabilitation Act of 1973 permits states in their individual plans to deal with their fiscal constraints by establishing priorities for accepting persons into their rehabilitation programs. This does not mean, however, that states may refuse services required by the Act and federal regulations. Indeed, the Act requires state rehabilitation agencies to provide maintenance services which we here have concluded include full-time attendant care where they are not provided in the state program. *See* 29 U.S.C. §721 (a)(8).

BVR has filed a motion to quash the appeal on the ground that the petitioner failed to file exceptions to the Director of BVR's report and recommended order. It contends that the effect of this failure was the waiver by the petitioner of all objections to the Director's report, citing rules appearing at Pennsylvania Code §35.213. Not only does the regulation cited refer to the waiver of objections only with respect to appeals to a higher administrative tribunal, not an appeals court, it is not applicable to this proceeding involving an Act of Congress. The Rehabilitation Act of 1973 was amended in 1978 to provide that the Director of any state unit shall establish procedures for the review of determinations made under Title I. In apparent response to this amendment, the Director of BVR established such procedures, effective August 2, 1978, for review within BVR including a provision that determinations of the Director after a fair hearing will be binding on BVR. No mention is made of exceptions to the Director's report. In view of the difference between the rules of administrative procedure found in the Pennsylvania Code and BVR's specific regulations on the point of whether exceptions to the Director's decision were required, it would be wholly inappropriate to quash this meritorious appeal.

Therefore we reverse the Secretary's order insofar as it denies the petitioner full-time attendant care and remand the record with the direction that such care be provided.

### ORDER

AND Now, this 17th day of March, 1982, the order of the Secretary of the Department of Labor and Industry is reversed insofar as it denies rehabilitation services in the form of full-time attendant care to Mark J. Turbedsky and the record is remanded with the direction that such care be provided.

Judge PALLADINO did not participate in the decision in this case.