**MILLER, Appellant,**

v.

**OHIO REHABILITATION SERVICES COMMISSION, Appellee.**

[Cite as *Miller v. Ohio Rehab. Serv. Comm.* (1993), 85 Ohio App.3d 701.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1111.

Decided March 31, 1993.

702

*Vicki L. Jenkins,* for appellant.

*Lee Fisher,* Attorney General, and *Gregg B. Thornton,* Assistant Attorney General, for appellee.

---

PETREE, Judge.

This is an R.C. 119.12 appeal from a judgment of the Franklin County Court of Common Pleas which affirmed a decision of appellee, Ohio Rehabilitation Services Commission ("RSC"), denying appellant, Beth Miller, further college aid. Appellant assigns three errors for our review:

"I. The court of common pleas erred in affirming the decision of the Rehabilitation Services Commission since the commission violated the Rehabilitation Act of 1973 by failing to provide services to maximize appellant's employability.

"II. The court of common pleas erred in affirming the decision of the Rehabilitation Services Commission to terminate services to appellant without prior consultation and in violation of the Rehabilitation Act of 1973 as amended.

"III. The court of common pleas erred by affirming the decision of the Rehabilitation Services Commission since the agency administrator did not have authority under the Rehabilitation Act of 1973 as amended to overrule the decision of the impartial hearing officer."

Appellant is presently a student at Kent State University, studying to become a photo illustrator. Her schooling has been paid for in large part by the RSC, which certified her as handicapped in August 1989. At that time, commission counselor K. James Toth found that appellant's alcoholism and related passive-aggressive personality disorder constituted a vocational handicap. He felt that since she had lost many waitressing jobs because of her alcoholism, and since that type of job was her sole work experience, she should not be required to work at her present cocktail waitress job but instead should be provided funds from the state to pursue a vocational goal in college to "better" herself.

After a supervisory review in May 1990, counselor Toth filed an addendum to the certificate of eligibility noting that appellant's alcohol abuse had gone into remission. He said that with personal therapy and Alcoholics Anonymous involvement, she had been able to stabilize her life and do well in training. He noted that she was still working around alcohol despite state aid and he advised against this. He opined that she should not be relegated to working as a cocktail waitress because this would cause continuing problems throughout her life.

Nevertheless, in December 1990, the commission sent appellant a certificate of ineligibility indicating that the "RSC/BVR Area 6 Management staff has determined that you are not eligible." Appellant appealed this determination to an impartial hearing examiner who was appointed to hear her claim.

At the administrative hearing before the examiner, the commission first called David Suveges, a commission rehabilitation supervisor, whose job duties include supervising the staff and reviewing cases in his jurisdiction. He said he had reviewed appellant's case on several occasions as part of a general agency review of all college cases in 1990. He said that he and several other members of the management staff who had reviewed appellant's case had concerns about it because there did not appear to be a substantial handicap to employment. After several supervisory reviews, counselor Toth was notified and given an opportunity to address the issue of ineligibility. Toth did so by formulating the aforementioned addendum to the certificate of eligibility. Suveges said that he did not think there was a substantial handicap to employment because appellant had been an alcoholic in remission for years. Appellant had been employed as a cocktail waitress for two years at that point and had successfully completed

alcohol dependency treatment and personal mental health therapy. On cross-examination, he admitted that he was not acting as a counselor in making these assessments. He further admitted that there was no written policy authorizing a supervisor to "veto" the decision of a counselor, but only a review system in place. He further admitted that during this review process the management staff had not communicated with appellant.

Robert Caplinger, area manager for Area 6 of the Bureau of Vocational Rehabilitation ("BVR"), also testified for the commission. He indicated that he had reviewed appellant's case along with five supervisors. He said he did not find the presence of a vocational handicap because appellant had been employed for three years without incident prior to applying for benefits and could get a job. He said that at the end of January 1991, he had a meeting with appellant to discuss her case but nothing changed his mind about her ineligibility. He said he felt counselor Toth erred because Toth did not have facts about appellant's prior work history and prior college work at the time of the initial eligibility determination. He also felt that appellant did not have to continue working as a cocktail waitress, but that that was her choice. He said her handicap did not prevent her from preparing for her chosen vocation.

The commission also called appellant to the stand. She said that she was presently employed as banquet server or waitress, a position that she had worked at for four years. She said she had been sober for three years. She said that it is difficult for her to serve or be around alcohol. She had been in several recovery programs prior to applying for BVR services.

She said that her alcoholism had impeded her progress in school when she was a teenager. She also chronicled a history of working as a waitress at a number of restaurants and getting fired for drunkenness or missing work because of drunkenness. She had broken a lot of bones and had had numerous blackouts over the years because of alcohol. Her studies had suffered as well. She had gone first to Bowling Green State University in 1976 but lasted only a year there because of alcohol. Then she went to Lakeland Community College and flunked out because of alcohol. She then went to Kent State University and flunked out there as well because of alcohol. She said she had discussed all of this with counselor Toth. Appellant said that since receiving BVR services she has been able to maintain sobriety and achieve a grade point average of 3.8. She said that none of the management staff had consulted with her prior to notifying her that she was ineligible.

Counselor Toth confirmed that he felt appellant was eligible for BVR services. He said that diagnostic testing revealed that her alcoholism was in remission but that she still had personality problems. He regarded her as handicapped because her loss of many jobs was traceable to her alcoholism. He determined that

working as a waitress serving alcohol was inappropriate for her but said he recognized the economic realities of the situation. He felt that her handicap presently interfered with her achievements.

Appellant called Carolyn Schiefer, the RSC manager of the division of policy. She said she could not recall any written policy allowing for management reviews, but she said there certainly was a system in place to accomplish such reviews.

Given this evidence, the hearing examiner found that appellant suffered from alcoholism and related dysfunctional personality characteristics. He further found that she had been determined to be eligible and that an individual written rehabilitation plan had been developed to accomplish her goal to be a photo illustrator. He found that there had been adequate progress toward a degree at Kent State, but that Canton Area Manager Caplinger had reviewed her case and found her ineligible. He also found that she had a history of working at waitressing jobs and getting fired for drinking. He found that her disability constituted a substantial handicap to employment.

The administrator of the commission reviewed the report and issued an order disapproving the hearing examiner's conclusions. The administrator restated the eleven findings made by the hearing examiner and added four more "findings." The administrator added that there was no evidence that appellant's current job was in jeopardy because of her disability, that there was no evidence that she needed help to retain employment, that there was no evidence that she was performing below a satisfactory level in college, and that there was reliable, probative, and substantial evidence that she was able to obtain, maintain, and/or prepare for employment commensurate with her interests, capacities and abilities without the intervention of the BVR. The administrator thus ordered that vocational rehabilitation ("VR") services be discontinued.

Appellant appealed this determination to the common pleas court pursuant to R.C. 119.12. The common pleas court affirmed, finding reliable, probative and substantial evidence to support the administrator's order. Appellant then timely appealed to this court.

In her first assignment of error, appellant argues that once the commission certified her as handicapped on account of her alcoholism, the commission was bound to continue supporting her through college in pursuit of her vocational goal, irrespective of whether she was presently employed at a job below her vocational potential. She insists that there was insufficient evidence to support the commission's determination that she was ineligible and therefore the commission abused its discretion.

 When the court of appeals reviews a decision of the common pleas court concerning the weight of the evidence in an appeal from an administrative

agency, the appellate court's role is limited to determining whether the common pleas court abused its discretion. *Mosholder v. Ohio Rehab. Serv. Comm.* (1991), 75 Ohio App.3d 134, 136, 598 N.E.2d 1271, 1272; *Nelson v. Ohio Rehab. Serv. Comm.* (Dec. 28, 1989), Franklin App. No. 89AP–564, unreported, 1989 WL 155959. An abuse of discretion means more than a mere error in judgment. It implies a decision without a reasonable basis or one that is clearly wrong. *Mosholder, supra,* 75 Ohio App.3d at 136, 598 N.E.2d at 1272. By contrast, when the court of common pleas reviews a decision of an administrative agency, it must determine whether there is reliable, probative, and substantial evidence in accordance with law to support the decision of the agency. Hence, the trial court must determine whether there is a presence or absence of the requisite quantum of evidence to support the agency's order. *In re Miller* (June 28, 1984), Franklin App. No. 83AP–1203, unreported, 1984 WL 5810.

■ Appellant's statutory-construction arguments depend upon a close examination of the federal and state rehabilitation Acts and the accompanying administrative rules. The federal Rehabilitation Act of 1973, Section 701 *et seq.,* Title 29, U.S.Code, establishes a federal grant program to assist states in providing rehabilitation services to handicapped individuals. State participation in the program is voluntary, but a state which chooses to participate must comply with the federal guidelines and regulations governing the Act, or risk the loss of federal funding. *Florida Dept. of Health & Rehab. Serv. v. Califano* (N.D.Fla. 1978), 449 F.Supp. 274, 276–277, affirmed *per curiam* (C.A.5, 1978), 585 F.2d 150; *Cook v. Pennsylvania Bur. of Vocational Rehab.* (1979), 45 Pa.Commw. 415, 420, 405 A.2d 1000, 1002.

The purpose of the Act is to "develop and implement, through research, training, services, and the guarantee of equal opportunity, comprehensive and coordinated programs of vocational rehabilitation and independent living, for individuals with handicaps in order to maximize their employability, independence, and integration into the workplace and the community." Section 701, Title 29, U.S.Code. The legislative history addressing the 1986 amendments to this Act supports the conclusion that Congress viewed the Rehabilitation Act as a comprehensive set of programs designed to meet the broad-range needs of individuals with handicaps in becoming integrated into the community and in " 'reaching their highest level of achievement.' " *In re Polkabla* (1992), 183 A.D.2d 575, at 576, 583 N.Y.S.2d 464, at 465, quoting Senate Report No. 388, 99th Cong.2d Sess. (1986).

The Ohio Rehabilitation Services Commission is the sole state agency authorized and designated to provide VR services to eligible handicapped persons under the federal Act. R.C. 3304.17; Ohio Adm.Code 3304–1–01; *Rone v. Fireman* (N.D.Ohio 1979), 473 F.Supp. 92, 126. The organizational structure of

the commission provides that the BVR is responsible for delivery of such VR services to eligible clients. *Id.* at 126; Ohio Adm.Code 3304–1–01(A). Among other things, these services expressly include the provision of vocational training at universities, colleges and vocational schools. Ohio Adm.Code 3304–2–58. The commission will also provide other goods and services to aid the handicapped person's vocational rehabilitation, such as maintenance payments to cover the cost of college housing and meals, transportation costs, treatment services and even school supplies. Ohio Adm.Code 3304–2–59.

In order to qualify for these generous benefits, an applicant must generally meet the state eligibility requirements set forth in Ohio Adm.Code 3304–2–54. This administrative rule provides in pertinent part:

"(A) 'Eligibility for services' means: (1) the presence of a physical or mental disability which for the person constitutes or results in a substantial handicap to employment; and (2) a reasonable expectation that VR services may benefit the person in terms of employability. Only an RSC counselor (or supervisor acting as counselor) may determine eligibility.

"(1) 'Disability' means a physical or mental condition which materially limits, contributes to limiting, or if not corrected, will probably result in limiting an individual's employment activities or vocational functioning.

"(2) 'Substantial handicap to employment' means that a disability impedes a person's occupational performance by preventing his or her obtaining, retaining, or preparing for employment consistent with capacities and abilities.

"(3) 'Employability' means that VR services are likely to help a person enter or retain full-time or part-time employment consistent with his or her capacities and abilities * * *." [1]

Under this rule, the commission may open a file in several ways. The commission may provide diagnostic services to the handicapped person to determine whether the applicant meets the program's criteria and can be certified by a commission counselor as eligible. Alternatively, the otherwise qualified handicapped applicant may be placed on extended evaluation status to determine whether VR services would benefit the applicant as required by the rule. At this juncture, the counselor and client identify an appropriate vocational goal for the client and develop a comprehensive individual written rehabilitation program to establish the VR services to be provided and to serve as a standard against which progress can be measured. See Section 361.40, Title 34, C.F.R. The rehabilita-

---

1. As the rule states, the foregoing definitions are designed to implement the nearly identical definitions contained in the federal statute and in the corresponding federal regulations. See Sections 706(7)(A) and 706(6), Title 29, U.S.Code. See, also, Section 361.1(c)(2), Title 34, C.F.R.

tion program and its implementation are subject to yearly periodic review by the commission. Ohio Adm.Code 3304–2–56(B)(4).

■ There is no vested right to receive further support from the commission. *Miller, supra,* Franklin App. No. 83AP–1203, at 4. Both federal and state provisions allow termination of benefits through a certification of ineligibility. Ohio Adm.Code 3304–2–61, which was designed to implement Section 361.35(c), Title 34, C.F.R. regarding certification of ineligibility, sets forth the standards and procedures to be followed by the commission in closing a client's file. This rule provides, in part:

"(A) RSC shall close a client's case for reasons that include, but are not limited to, the following:

"(1) The client does not have a disability;

"(2) The client does not have a vocational handicap;

"(3) Services are not expected, or no longer expected, to improve the client's employability due to the severity of the handicap;

"(4) All necessary VR services have been provided and the client is suitably employed[.]"

The parties do not dispute that appellant's alcoholism can qualify as a handicap under the federal Rehabilitation Act. Though current alcohol abuse that prevents performance of employment disqualifies one from participation in the program, Section 706(8)(B), Title 29, U.S.Code, it is undisputed that appellant is not currently abusing alcohol.

Appellant's argument here is that the commission misinterpreted and misapplied the "substantial handicap to employment" standard contained in the code. Appellant asserts that the commission essentially found that her current employment as a cocktail waitress was within her capacity and abilities and therefore she was suitably employed. Appellant maintains, however, that the purpose of the federal program is not just to get the handicapped alcoholic sober enough to get a job, but it is also to rehabilitate that person to maximize vocational potential to the fullest level of achievement.

Indeed, several learned courts have recognized that the Rehabilitation Act requires the state VR agency to maximize the employability of the eligible handicapped person. *Indiana Dept. of Human Serv. v. Firth* (Ind.App.1992), 590 N.E.2d 154; *Cook, supra; In re Polkabla, supra; Buchanan v. Ives* (S.D.Maine 1991), 793 F.Supp. 361. As the *Firth* court explained, an individual's present ability to become employed in the job market at some level does not equate with a maximization of that individual's vocational potential. Hence, the *Firth* court held that a deaf law student should have been provided an interpreter for his law

studies in his chosen vocational field, regardless of whether that student could have gone out and obtained a job with his undergraduate degree in English.

■ We likewise agree with appellant that it would be improper for the commission to deem her present job as a cocktail waitress suitable employment within her present "capacities and abilities." The commission should measure the suitability of employment and the handicapped person's capacities and abilities against attainment of employment consistent with that person's recognized vocational goal. *Firth, supra,* 590 N.E.2d at 159. Here, appellant's vocational goal is to be a photo illustrator. Her employment as a cocktail waitress bears no relation to that educational goal. Accordingly, it would have been improper for the commission to find her ineligible on this basis.

However, the commission plainly did not engage in this type of reasoning. Instead, the commission found that appellant's alcoholism no longer prevented her from attaining her vocational goal and therefore was not a "substantial handicap to employment." In other words, her handicap did not serve as a barrier to achieving her goal, like blindness or deafness would serve as a barrier to an aspiring law student. Rather, the commission found that appellant's past status as an alcoholic does not prevent her from going to school at all.

At the administrative hearing before the commission hearing examiner, appellant chronicled her past history of alcohol abuse and how it affected her life. She had gone from job to job waitressing at various restaurants. She always had access to alcohol on these jobs and would sneak and steal drinks. She would be drunk on the job and miss work after binges. Eventually she would be fired. This pattern repeated itself over and over. By this evidence, appellant definitely proved that at one time she was an alcoholic. She further proved that her alcoholism had impaired her ability to hold a job in the food services field, which at the time was the only thing she was qualified to do, according to her testimony. However, the commission established that she had been sober for several years and has had no relapses, even though she still works as a cocktail waitress. The commission also established her satisfactory progress in achieving her vocational goals.

The hearing examiner felt that it would be wrong to punish appellant for her satisfactory progress in school and at work. He further felt that not allowing further benefits to a "recovered" alcoholic would mean that no alcoholics could ever qualify for benefits under that statute because current abusers are expressly prohibited from getting services.

■ The commission was correct to reject this reasoning because one has to do more to prove a substantial handicap to employment than merely pointing to how past jobs were lost because of the disability. One is not granted benefits by

virtue of one's status as a disabled person. Rather, the Rehabilitation Act requires that the VR services be *necessary* to enable the disabled person to attain the person's vocational goal. The commission must measure the effect of the handicap on the person's present capacities and abilities in light of the person's vocational goal.

Here, appellant's vocational goal was to be a photo illustrator. Her alcoholism did not prevent her from going to school to attain that goal in any way. Of course, state assistance would help her attain the goal, as it would anyone, but that is not the test. One must ask if state aid is necessary because without it the person's handicap would render her unable to go to school. Without state aid, appellant could attend school at her own expense and with college loans if necessary.

This holding does not, as the hearing examiner concluded, disqualify all alcoholics from participation in the program. Appellant is a "recovered" alcoholic for purposes of the Rehabilitation Act. In some philosophical sense, as the trial court noted, one may never really "recover" from alcoholism because the alcoholic must live one day at a time with the potential for relapse. But there is really no indication that this will occur in this case and it would be improper to base a decision on speculation. Hence, appellant was initially granted aid as a "recovering" alcoholic and the program enabled her to maintain sobriety and clean up her life.

The commission's efforts to get appellant's life back on track have certainly aided her. While it may have been wiser to keep appellant in school, free from financial worry, so that she would not relapse and thereby waste the funds already expended on her education, and while it may have been wiser to have avoided the creation of an incentive to relapse into alcoholism just to get state benefits, we cannot base our determination on what we think is wise or unwise. We must stick to the statutory language and legislative history of this particular Act. On this score, we must hold that the commission's construction of the "substantial handicap to employment" language was reasonable. Further, the commission's decision was supported by reliable, probative and substantial evidence and its application of the statutes and regulations to the facts of this case was in accordance with law. The common pleas court did not abuse its discretion in affirming the decision in this respect. Accordingly, appellant's first assignments of error is not well taken.

In her second assignment of error, appellant urges that the commission erred by failing to consult her before depriving her of her vocational rehabilitation benefits. She also challenges the commission's review procedure, contending that only counselors or supervisors acting as counselors can deny vocational rehabilitation benefits.

Ohio Adm.Code 3304–2–61(B) provides:

"When a client is determined ineligible, or after becoming eligible is determined to be no longer eligible, RSC shall close the case *only with the full consultation of the client or, as appropriate, his or her parent, guardian, or other representative.* \* \* \*"

This rule also provides certain exceptions, which are not applicable here, when consultation is not necessary. Further, the rule provides that the RSC shall provide the client with a "written notice containing the reasons for the ineligibility determination, the methods of client appeal, and the availability of the client assistance program."

■ If we assume that the consultation language in this rule requires client participation in benefit cancellations, it is clear that the rule was not satisfied because no one talked to appellant prior to determining her ineligibility. In any event, we do not think that appellant can demonstrate any real prejudice flowing from the lack of prior consultation with her. In *Beason v. Ariz. Dept. of Economic Security* (Ariz.App.1979), 121 Ariz. 499, 591 P.2d 987, the appellate court held that the improper failure of the state's vocational rehabilitation agency to consult with the handicapped person prior to termination of VR benefits under the Rehabilitation Act did not in itself render the decision to deny such benefits an abuse of discretion because the defect was cured when the handicapped person was given a full opportunity to present her case at a postdenial administrative hearing. In essence, the handicapped person failed to demonstrate any prejudice flowing from the lack of full consultation. We think the same can be said in this case.

Appellant, nevertheless, argues that it was inappropriate for agency management personnel to review her case file and make a decision on her claim, in effect overturning the decision of counselor Toth, who had been seeing her face-to-face. Appellant points out that Ohio Adm.Code 3304–2–54(A) expressly states that "[o]nly an RSC counselor (or supervisor acting as counselor) may determine eligibility." Here, the supervisor who reviewed the claim expressly stated that he was not acting as a counselor in doing so.

■ An essential premise of appellant's argument is that only counselors can determine benefits under the program. This premise does not hold up to scrutiny. Ohio Adm.Code 3304–2–64 sets forth the responsibilities of vocational rehabilitation counselors and states in division (A) that:

"The RSC vocational rehabilitation counselor (or a supervisor serving as a counselor) shall carry out all requirements contained in rules 3304–2–51 to 3304–2–64 of the Administrative Code *that are not assigned to another party.*" (Emphasis added.)

Hence, the VR counselor would have primary responsibility to implement Ohio Adm.Code 3304–2–61, which deals with closure of client files. But this responsibility may be assigned by the agency to another party. Ohio Adm.Code 3304–2–54 requires that only counselors or supervisors acting as counselors can "determine eligibility." This means that for initial eligibility to be determined, the applicant must be seen by a VR counselor or supervisor acting as a counselor, who can then decide whether to open a VR file on the handicapped person. This factual determination, then, is what is meant by "determining eligibility." This determination leads to a certification of eligibility and the corresponding provision of VR services. The regulations treat the tail end of the process in a different manner. The regulations refer to a determination of ineligibility in Ohio Adm. Code 3304–2–61 as a "closure." This corresponds with the federal regulation's "certificate of ineligibility" requirements. See Section 361.35(c), Title 34, C.F.R. While the rule in effect states that only a counselor or supervisor acting as a counselor can open a file, it does not state that only a counselor or person acting as counselor can close a file. Indeed, this only makes sense. If, for instance, all federal funding were cut off to this program and the state could no longer provide benefits, what sane reason would there be for sending all the client files to counselors to close the files when those counselors' evaluations of vocational impairment and their factual determinations would be entirely irrelevant to the reason for closing the files? Appellant's construction is unreasonable. Hence, appellant's second assignment of error is not well taken.

██ Appellant's final assignment of error contends that the commission violated federal law by failing to establish standards of review for the administrator to apply to decisions by hearing examiners in client appeals. Section 361.48(c)(2)(vi), Title 34, C.F.R. states that when the agency has an impartial hearing examiner review a counselor's decision, the impartial hearing examiner's decision may be further reviewed by the director of the agency. The decision of the director "to review any impartial hearing officer's decision must be based on standards of review contained in written State unit policy."

As stated in division (D) of Ohio Adm.Code 3304–2–62, this section, pertaining to client appeals of counselor decisions, was designed to implement the federal regulations contained in Section 361.48(a) to (d). This rule provides for a formal evidentiary hearing conducted before an impartial hearing examiner. The formal hearing "shall be conducted in agreement with Chapter 119. of the Revised Code" and the requirements in the rule. Ohio Adm.Code 3304–2–62(B)(2). The hearing examiner prepares a written report, with findings and the grounds for the decision as required by R.C. Chapter 119, and then submits it to the administrator of the commission who reviews it "in accordance with Chapter 119. of the Revised Code."

R.C. 119.09 provides for an evidentiary hearing conducted by administrative agencies rendering adjudication orders. This statute also provides for appointment of a hearing examiner who renders a written report that is transmitted to the agency for approval. The statute states that:

" * * * No recommendation of the referee or examiner shall be approved, modified, or disapproved by the agency until after ten days after service of such report and recommendation as provided in this section. The agency may order additional testimony to be taken or permit the introduction of further documentary evidence. The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency, and the order of the agency based on such report, recommendation, transcript of testimony and evidence, or objections of the parties, and additional testimony and evidence shall have the same effect as if such hearing had been conducted by the agency. No such recommendation shall be final until confirmed and approved by the agency as indicated by the order entered on its record of proceedings, and if the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval."

Appellant contends that the federal regulations require written standards of review and that Ohio has failed to promulgate them, necessitating a reversal of the administrator's decision. Appellant offered a memorandum from the regional office of the United States Department of Education, Rehabilitation Services Commission to state directors of vocational rehabilitation. This memorandum answers questions about the "standards of review" requirement of Section 361.48(c)(2)(vi), Title 34, C.F.R. and clarifies the federal government's position. It states that the rule does not require a state director's review to be a rehearing but rather a "paper review with an opportunity for submission of additional written information that may be relevant."

Some courts have construed certain provisions of the Rehabilitation Act as enforceable requirements which participating states must enact, apart from the mere threat of the denial of federal funds by the federal government for noncompliance. *Turbedsky v. Dept. of Labor & Industry* (1982), 65 Pa.Commw. 363, 371, 442 A.2d 849, 853 (state agency may not refuse to provide services required by the Act and regulations on the ground they are not included in the state's own program); *Schornstein v. New Jersey Div. of Vocational Rehab. Serv.* (D.N.J.1981), 519 F.Supp. 773 (state must at least provide services enumerated in the Act which are necessary to assist handicapped person attain vocational goal). Even if we assume that Ohio was bound to promulgate written standards of review and that an applicant can claim failure as error, appellant cannot demonstrate any error or prejudice in this case.

Ohio Adm.Code 3304–2–62 incorporates the procedural and substantive criteria of R.C. 119.09 into the regulatory scheme. This statute expressly states that an agency may approve, disapprove or modify the report of the hearing examiner. The statute essentially provides for the type of paper hearing that is referred to in the regional office memorandum submitted by appellant. We think this statute qualifies as "written state unit policy" and the incorporation of R.C. 119.09 standards satisfies Section 361.48(c)(2)(vi), Title 34, C.F.R.

In any event, it is absolutely clear that the administrator made his determination here as a "matter of law," as stated in his order. Whatever standards of review are contemplated by Section 361.48(c)(2)(vi), Title 34, C.F.R., at least the administrator had the right and obligation to make legal determinations based on undisputed evidence to support his construction of the statute. That is what happened in this case. Naturally, appellant had to contend with this sort of review under any type of review scheme. Hence, she cannot claim any prejudice to her rights in this case. In other words, it is not as if the administrator purported to exercise unfettered discretion or engage in *de novo* factual review and appellant had no notice of this and was thereby prejudiced. In sum, even if we were to find that there were no standards of review promulgated in this case this would have no bearing on the outcome. We therefore reject appellant's third assignment of error.

For the foregoing reasons, defendants' assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DESHLER, J., concurs.

WHITESIDE, J., dissents.

WHITESIDE, Judge, dissenting.

Since I am unable to concur in the conclusions reached by the majority, I must respectfully dissent.

The record reveals no evidence that would justify termination of assistance to appellant, the decision and recommendation of the hearing examiner correctly assessing the situation and applying the law. R.C. 3304.17 mandates that "[t]he rehabilitation services commission shall provide vocational rehabilitation services to all eligible handicapped persons." Contrary to the majority opinion, assistance to appellant was terminated because she was successfully employed as a cocktail waitress, despite the hearing officer's factual finding that she "has never been employed at a job related to her vocational goal."

The essential finding of the administrator was that "appellant had been erroneously made * * * eligible for services." It is this erroneous legal conclusion that is the basic foundation for the termination of assistance. The administrator then bootstrapped a "conclusion of law" that appellant was prevented from attaining her vocational goal not by her disability but by her "lack of credentials." It is clear that the finding of the administrator was that appellant was never eligible for services and, thus, she was not eligible for continued services. Under the evidence in this case, that conclusion is contrary to law, and the first assignment of error should be sustained. Such a ruling would render moot the second and third assignments of error and, under App.R. 12(A), they need not be addressed.

Accordingly, I would reverse and remand for further proceedings.