**INDIANA DEPARTMENT OF HUMAN SERVICES, Appellant–Respondent,**

v.

**Andrew FIRTH, Appellee–Petitioner.**

No. 49A02–9109–CV–413.[1]

Court of Appeals of Indiana,
First District.

April 15, 1992.

1. This case transferred by direction of the Chief Judge on 2–20–92.

Linley E. Pearson, Atty. Gen., Robert K. Robisch, Deputy Atty. Gen., Indianapolis, Eaton E. Randles, Indiana Dept. of Human Services, Indianapolis, for appellant-respondent.

Milo G. Gray, Jr., Legal Services Director, Dana L. Long, Staff Atty., Indiana Protection and Advocacy Services, Indianapolis, for appellee-petitioner.

BAKER, Judge.

This appeal requires us to interpret certain sections of the Rehabilitation Act of 1973.[2] Respondent-appellant Indiana Department of Human Services (the Department) appeals the trial court's ruling which reinstated an award to petitioner-appellee Andrew Firth. The Department raises two issues for our review, but our decision requires us to address but one, restated as

I. Whether Firth is eligible for the Department's services.

We affirm, but remand to the Department for a determination of which services Firth should receive.

### FACTS

Andrew Firth is a 25 year old profoundly deaf student currently attending classes at the University of Notre Dame Law School. He possesses a Bachelor of Arts degree in English earned in May, 1988, from Gallaudet University in Washington, D.C. Prior to entering law school, Firth worked as a legal messenger for a Reno, Nevada law firm, a cashier at a Gallaudet bookstore, a tutor for the Gallaudet English Department, a runner for an engineering firm, and a busboy at a restaurant. After graduating from Gallaudet, Firth sought to employ his writing skills in the fields of advertising, marketing, and technical writing, but after sending out at least eighteen resumes and receiving no offers to interview, he chose to enter law school. Whether Firth's job search was unsuccessful because of his deafness, the general nature of the national economy, his qualifications, or some combination of these factors or others is not known.

After he arrived in Indiana to attend law school, Firth applied to the Office of Vocational Rehabilitation (OVR) for assistance in defraying the cost of an interpreter to assist him in his law classes. The OVR is a subdivision of the Department. Upon receiving Firth's application, the OVR assigned his case to counselor Kathy Sheffield. Sheffield performed a diagnostic study to gather information about Firth's handicap and then determined, on August 18, 1989, that Firth was eligible for assistance. The OVR agreed to finance an interpreter for Firth, but it appears the particular interpreter assigned was less than fully satisfactory to him. Firth then found an alternate, costlier interpreter, but the OVR refused to pay the additional fee. Firth wrote a letter to the OVR in which he announced his intention to appeal this decision; he also asked for funds to meet his tuition, book, transportation, and maintenance expenses.

Firth's administrative hearing was held on November 13, 1989. The hearing officer was Crystal Sears. On November 30, 1989, Sears issued a non-final decision in which she concluded OVR improperly denied Firth's request and that OVR should bear the additional cost of Firth's subsequent interpreter and should reimburse him for the money he had already paid the interpreter. But because Firth had not formally requested tuition, book, transportation, and maintenance expenses, Sears withheld judgment on those issues pending proper application.

Gary Mott, the acting director of OVR, questioned Sears's decision. On December 20, 1989, Mott informed Firth that, pursuant to IND.CODE 4–21.5–3–29, he was reconvening the hearing with instructions to Sears to receive testimony and other evidence on the issue of Firth's eligibility for OVR services. After a second hearing, Sears issued another non-final decision, again determining that OVR should bear the added costs of Firth's new interpreter and reimburse Firth for money he already expended.

. . .

---

**2.** 29 U.S.C. § 701 *et seq.,* as amended.

Two weeks or so later, on February 22, 1990, pursuant to IND.CODE 4–21.5–3–29(e) and 34 C.F.R. § 361.48(c)(2)(iv), Mott notified Firth of his intent to review Sears's decision. On March 23, 1990, Mott notified Firth that he had entered a final order denying Firth's eligibility for any OVR assistance. Mott found that, consistent with Firth's capacities and abilities, Firth was employable in the fields of advertising, marketing, and technical writing, and therefore did not meet the requirements for eligibility and OVR assistance.

Firth appealed Mott's final order to the trial court. The trial court vacated the agency's final order and reinstated Sears's decision that OVR was to bear the cost of Firth's second interpreter and was to reimburse Firth for both funds already expended and "financial assistance toward Andrew Firth's law school training." *Record* at 319. The Department now appeals.

## DISCUSSION AND DECISION

### Standard of Review

■ IND.CODE 4–21.5–5–1 *et seq.* of the Indiana Administrative Adjudication Act establishes the exclusive means for judicial review of an agency action. We stand in the position of the trial court, conducting review solely to determine whether the agency had jurisdiction over the subject matter of the case, whether the agency's order was based on proper procedure and was supported by substantial evidence, whether the decision was arbitrary or capricious, or whether the decision was in violation of any constitutional, statutory, or legal principles. *Indiana Dep't of Natural Resources v. Krantz Bros. Constr. Corp.* (1991), Ind.App., 581 N.E.2d 935, 940. Both this court and the trial court are prohibited from reweighing evidence and reassessing witness credibility; we must both accept the facts as found by the administrative body. *Metropolitan School*

*Dist. of Martinsville v. Mason* (1983), Ind. App., 451 N.E.2d 349. An agency's determinations regarding questions of law, however, are not accorded the same degree of deference, as law is the province of the judiciary. *Board of Trustees of Public Employees' Retirement Fund of Indiana v. Miller* (1988), Ind., 519 N.E.2d 732.

### The Rehabilitation Act of 1973

■ The governing legislation in this case is the Rehabilitation Act of 1973, as amended. The purpose of the Rehabilitation Act is "to develop and implement, through research, training, services, and the guarantee of equal opportunity, comprehensive and coordinated programs of vocational rehabilitation and independent living, for individuals with handicaps in order to maximize their employability, independence, and integration into the workplace and the community." 29 U.S.C. § 701. To be eligible, then, a person must be an "individual with handicaps." "Individual with handicaps" means "any individual who (i) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (ii) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services...." 29 U.S.C. § 706(8)(A). "Substantial handicap to employment" means "that a physical or mental disability (in light of attendant medical, psychological, vocational, educational, and other related factors) impedes an individual's occupational performance, by preventing the obtaining, retaining, or preparing for employment consistent with the individual's capacities and abilities." 34 C.F.R. § 361.1 (1991). Neither the statute nor the regulations defines "capacities and abilities," however.

The crux of this appeal concerns Firth's eligibility for the vocational services [3] offered under the Act. "Eligibility" refers to

---

**3.** Specifically, the vocational services at issue here are the cost of an interpreter, tuition, books, and supplies. All are authorized expenses listed in the OVR's Policy and Procedure Manual. *See Manual,* 4–6.4D(e) (interpreters); 4–5–6.4B(1) (tuition, books, supplies). Under 34 C.F.R. § 361.42 (1991), the OVR is required to

offer these particular services in addition to many others. Firth did not continue to pursue his claim for transportation and maintenance after it was denied, so we have no need to address the propriety of an award for those two expenses.

a certification that "(i) [a]n individual has a physical or mental disability which for that individual constitutes or results in a substantial handicap to employment, and (ii) [v]ocational rehabilitation services may reasonably be expected to benefit the individual in terms of employability." *Id.* "Employability," in turn, means

a determination that, with the provision of rehabilitation services, the individual is likely to enter or retain, as a primary objective, full-time employment, or if appropriate, part-time employment, consistent with the capacities or abilities of the individual in the competitive labor market; the practice of a profession; self-employment; homemaking; farm or family work (including work for which payment is in kind rather than in cash); sheltered employment; home-based employment; supported employment; or other gainful work.

*Id.* To date, Firth has received four opinions on his eligibility. His counselor, Kathy Sheffield, and his hearing officer, Crystal Sears, determined Firth was eligible for OVR assistance. Gary Mott, the acting director, issued a final decision that Firth was not. The trial court overruled Mott's determination and held Firth was, in fact, eligible.

Both the Department's and the trial court's conclusions on the issue of eligibility center on the meaning of "substantial handicap to employment." Substituting facts peculiar to Firth's situation into the definition of "substantial handicap to employment," the question of Firth's eligibility becomes:

1. Whether Firth's deafness
2. impedes
3. Firth's occupational performance
4. by preventing the obtaining, retaining, or preparing for employment
5. consistent with Firth's capacities and abilities.

If the answer to this question is yes, Firth is eligible for OVR services; if no, he is not eligible. Pointing to Firth's English degree and his past employment history, the Department argues Firth is not substantially handicapped because he is currently capable of obtaining employment in fields utilizing writing skills, such as advertising, marketing, and technical writing. Therefore, the Department argues, Firth is presently employable consistent with his capacities and abilities, and consequently is ineligible for OVR services. In stark contrast, the trial court determined that "a review of the record of the administrative proceedings reveals no evidence to support the finding that [Firth] is potentially employable in fields consistent with his capacities and abilities." *Record* at 317. Firth claims the Department's ruling was arbitrary and capricious; the Department claims the trial court's decision was likewise.

■ When construing a statute, our foremost duty is to determine and give effect to the true intent of the legislature. *Superior Constr. Co. v. Carr* (1990), Ind., 564 N.E.2d 281; *Adult Group Properties, Ltd. v. Imler* (1987), Ind.App., 505 N.E.2d 459, *trans. denied.* To do this, it is necessary to view the statute within the context of the entire act, rather than in isolation. *Matter of Middlefork Watershed Conservancy Dist.* (1987), Ind.App., 508 N.E.2d 574. We presume words appearing in the statute were intended to have meaning, *Evansville v. Int'l Assoc. of Fire Fighters, Local 357* (1987), Ind., 516 N.E.2d 57, and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Park 100 Dev. Co. v. Indiana Dep't of Revenue* (1981), Ind., 429 N.E.2d 220. We will not construe statutes in a manner which leads to absurdity or hardship. *Superior Constr. Co., supra.*

Applying these principles of statutory construction, we shall now analyze the "substantial handicap to employment" definition used by the Act. The subject of the sentence is "Firth's deafness." The verb is "impedes." The direct object is "occupational performance." The most basic question, then, is whether Firth's deafness impedes his occupational performance. But the verb, impedes, is modified; to be a substantial handicap to employment, Firth's deafness must impede his occupational performance in a certain way: by

**158**

preventing the obtaining, retaining, or preparing for employment consistent with his capacities and abilities.

"Capacity" and "ability," as we have said, are not defined in the act or accompanying regulations. In common usage, however, "[a]bility is the power, mental or physical, to do something, and usually implies doing it well. Capacity refers to the condition that permits one to acquire that power." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 3 (4th ed. 1969). Here, it seems likely that Firth has the mental and physical power to obtain a writing job, if one became available, regardless of his past failure. He has an English degree and has already tutored students in the subject. It is also apparent Firth will have the ability to practice law if he can become licensed. Employment as a writer and as an attorney both appear to be consistent with Firth's capacities and abilities.

Generalized, the question becomes whether Firth's deafness ... impedes his performance ... by preventing him from employment consistent with either job. Firth's deafness would not seem to prevent him from writing, but it certainly does prevent him from preparing to become a lawyer, because he requires an interpreter while in his law classes. The Act does not instruct us, unfortunately, whether when considering the prevention of "employment consistent with capacities and abilities," we are to look to the individual's *present* capacities and abilities or instead to the individual's *potential* or *future* capacities and abilities.

The parties dispute the effect of *Cook v. Comwlth., Dep't of Labor and Industry* (1979), 45 Pa.Cmwlth., 415, 405 A.2d 1000, a factually similar case. Timothy Cook, whose hemophilia crippled his knees and ankles at an early age, sought tuition, room, board, and other financial assistance while he attended law school. As an undergraduate, the Bureau found him eligible for its services, but when Cook entered law school, the Bureau issued a final decision terminating assistance because he was employable within the terms of the Act and was therefore ineligible since he needed no further training.

On appeal, Cook conceded he was capable of finding employment with his undergraduate degree in political science. The question was whether future vocational rehabilitative services could reasonably be expected to benefit Cook's employability. The appellate court was unable to determine the answer to this question based on the record it had, and remanded for further proceedings. After noting Cook agreed he was capable of finding employment with his undergraduate degree but had not conceded his employability, the court observed that "[a]bility to be employed at any job is not to be equated with the definition of employability found in the federal regulations." *Id.* 405 A.2d at 1004, note 8. Firth argues this observation supports his position, and we agree, but we also agree with the Department that it constitutes *obiter dictum*, a statement not necessary to a determination of the issues presented. *Koske v. Townsend Engineering Co.* (1990), Ind., 551 N.E.2d 437, 443.

Another case, *Jones v. Illinois Dep't of Rehabilitation Services* (7th Cir.1982), 689 F.2d 724, in which a deaf student sued for costs of an interpreter during his college education, is not directly on point because there it was conceded that Jones, the deaf student, was eligible for services in the first instance. *Jones* is notable only for the proposition that the deaf student was eligible for rehabilitative services.[4]

4. We are aware of several other cases on issues of eligibility under the Act but find them inapposite. In both *de la Torres v. Bolger* (N.D.Tex. 1985), 610 F.Supp. 593, *aff'd* 781 F.2d 1134 (5th Cir.1986) (left-handed postal carrier forced to perform duties right-handed) and *E.E. Black, Ltd. v. Marshall* (D.Hawaii 1980), 497 F.Supp. 1088 (apprentice carpenter with congenital abnormality denied employment by federal contractor), the issue of eligibility centered around a different statutory definition of "handicapped individual," one which asks whether a physical or mental impairment "substantially limits one or more of such person's major life activities ... or [whether] the individual is regarded as having such an impairment." 29 U.S.C. 706(8)(B). The Department relied on the former in determining Firth's ineligibility, but we think this

The cases are not wholly persuasive one way or the other, but they suggest it is more appropriate to look to the individual's potential capacities and abilities rather than those the individual currently possesses. Were we to consider only an individual's present capacities and abilities, we would be hard-pressed to find circumstances in which a substantial handicap to employment existed. Only the most severely handicapped individuals possess no power whatsoever to become employed in this capitalistic society; even fewer, perhaps, possess no capacities and abilities.[5] After years of discrimination, mentally-disabled individuals now work in fast food restaurants, schools, and the like. In our own state capitol building, blind citizens run the concession stand, and run it well. The point is, almost all handicapped individuals could be employed in a position consistent with their present capacities and abilities, even given the handicap. In this sense, were we to consider only a person's present capacities and abilities, the definition would be useless. In essence, the question would be, "Given the fact that, despite your handicap, you still possess an ability to be employed, does your handicap prevent you from working?" The answer, of course, is almost always no, because when it is assumed the handicap does not impede employability, a person can always be employed in a position consistent with that handicap. This interpretation would

render the Act pointless, an exercise in futility, and we will not countenance it.

Instead, we think it far more likely that Congress wished to assist people like Andrew Firth, whose handicap inhibits their power to "maximize" employability, independence, and integration into the workplace and the community.[6] The legislative history speaks of employment "goals," further supporting our decision that we should look to the individual's potential capacities and abilities. "[E]very effort should be expended to provide services to individuals so that they may reach their vocational goal...." S.Rep. No. 93–318, 93rd Cong., 1st Sess., reprinted in 1973 U.S. CODE CONG. & ADMIN.NEWS 2076, 2095.[7] Although there is no legislative or administrative history directly pertaining to the meaning of "capacities and abilities," our review of the general legislative history leaves us with no doubt that we are to favor the more expansive reading, particularly given the stated purpose of the Act, to maximize employability. We must refuse the Department's invitation to substitute a contrary purpose in place of that clearly expressed by the Congress.

Because it is quite evident Firth's deafness prevents his preparation for employment as an attorney, the trial court's judgment to that effect was not erroneous. The Department's decision, on the other hand, was in violation of statutory principles inasmuch as it incorrectly interpreted

reliance misplaced. The *de la Torres* facts are markedly distinguishable, and to the extent the conclusions drawn in the opinion support the Department's position, we simply disagree with those conclusions. *E.E. Black, Ltd.* recommended a case-by-case approach, but suggested the answer to questions of eligibility lies closer to the position adopted by the trial court rather than to that adopted by the Department. In *Schornstein v. New Jersey Div. of Vocational Rehabilitation* (D.New Jersey 1981), 519 F.Supp. 773, *aff'd* 688 F.2d 824, (3d Cir.1982), another interpreter case, the Division of Vocational Rehabilitation conceded the deaf student required interpreter services to meet her vocational goals. The court in *Martin v. Comwlth., Dep't of Labor and Industry* (1983), 75 Pa.Cmwlth. 403, 461 A.2d 1351 was careful to limit its decision to the particular facts before it.

5. Those individuals who are so severely disabled that employment is not possible are also entitled

to the vocational services offered under the Act. *See* S.Rep. No. 93–318, 93rd Cong., 1st Sess., *reprinted* in 1973 U.S.CODE CONG. & ADMIN. NEWS 2076, 2092.

6. We agree with the Department that the purpose of the Act is to maximize the employability of individuals with handicaps, and that, when deciding how much weight to give to the purpose of the Act, one must first determine whether the individual in question is "an individual with handicaps," i.e. whether the Act even applies. Nevertheless, the spirit of the Act is clear to us: to assist those citizens whose handicap substantially interferes with their ability to make the most of their situation.

7. From the beginning, Firth and his OVR counselor Sheffield determined Firth's vocational goal was "attorney."

and applied the regulatory definitions to Firth's case.

█ The trial court erred, however, in reinstating the decision of the hearing officer which awarded Firth interpreter fees, reimbursement for fees already expended, and other financial assistance. On review of an allegedly unlawful administrative determination, the sole relief the trial court or the appellate court may grant is a remand for further determination. *Metropolitan School Dist. of Martinsville, supra.*

The trial court's determination that Firth is eligible for OVR services is affirmed, and the cause is remanded to the Department for a determination of which services Firth should receive.

BUCHANAN and STATON, JJ., concur.