**JOHN MALONE ENTERPRISES, INC., Appellant–Petitioner,**

v.

**Kevin J. SCHAEFFER, Chairman, Barbara J. Glass, Vice Chairman, Gigi M. Marks, Commissioners of the Indiana Alcoholic Beverage Commission, Kevin Lambright, Intervenor–Remonstrator Below, Winford Jones, Intervenor–Remonstrator Below, Brad Miller, Intervenor–Remonstrator Below, Shipshewana Retail Merchants Association, Intervenor–Remonstrator Below, Appellees–Defendants.**

No. 49A05–9602–CV–70.

Court of Appeals of Indiana.

Dec. 23, 1996.

Bill D. Eberhard, John R. Gastineau, Steele, Ulmschneider & Eberhard, La-Grange, for Appellant–Petitioner.

Pamela Carter, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellee, Commissioners of the Alcoholic Beverage Commission.

Philip A. Terry, McHale, Cook & Welch, P.C. Indianapolis, for Appellees, Kevin Lambright, Winford Jones, Brad Miller and Shipshewana Retail Merchants Association.

## OPINION

FRIEDLANDER, Judge.

John Malone Enterprises, Inc. appeals from an order of the Marion Superior Court affirming the denial by the Alcoholic Beverage Commission of Malone's application for a license to operate a package liquor store in Shipshewana, Indiana.

We affirm.

The following restated issues are presented on appeal:

1. Did the Commission's denial of Malone's application for a retail liquor permit violate the Establishment Clause of the United States Constitution or the Freedom of Religion Clause of the Indiana Constitution?

2. Was the Commission's decision to deny the application for a retail liquor permit arbitrary or capricious, not supported by substantial evidence, or contrary to law?

3. Are the intervenors entitled to recover from Malone the fees they have incurred in defending this appeal?

Shipshewana is a small town in western LaGrange County with approximately 500 people living within its corporate boundaries. Persons adhering to Amish and Mennonite religious beliefs comprise seventy-five per-

cent of the population of Shipshewana and Newbury Township, where Shipshewana is located. Malone applied to the Commission for a "type–217" permit to sell liquor, wine, and beer packaged for off-premises consumption at a site in the northern part of Shipshewana. At a public hearing on Malone's application held before the LaGrange County local board, remonstrators presented petitions containing 1334 signatures, including 899 with Shipshewana addresses, opposing issuance of the permit. Malone presented petitions bearing seventy-one signatures, sixty-three of which had Shipshewana addresses, supporting issuance of the permit. Ninety-five percent of the eighty-seven people who attended the local board's hearing were opposed to issuance of the permit. In addition, Kevin Lambright, the owner of the Shipshewana Auction and Flea Market, Brad Miller, a Shipshewana resident and a pastor at the Marion Mennonite Church, and Winford Jones on behalf of the Shipshewana Retail Merchants Association voiced their opposition to the issuance of the permit.

The local board voted unanimously to deny issuance of the permit, citing the following reasons: (1) The "majority of citizens and business people of Shipshewana area were not in favor of issuance of permit", (2) "[t]he community does not desire such a permit [as] shown through those present at the meeting", and (3) "[o]verwhelming objections by citizens of town & township that they do not want retail outlet. This has been the 4th. attempt." *Record* at 579.

The Commission preliminarily rejected Malone's application for the permit because of the local board's recommendation that the permit not be granted. At a hearing on Malone's appeal from the Commission's rejection of its application, the hearing judge viewed the videotape of the hearing held before the local board, and the content of the videotape was transcribed into the appellate record.

The appellate record reveals that Lambright testified at the hearing before the local board that he had experienced alcohol-related problems with people at the Shipshewana Auction, of which he was a co-owner, and believed that the proposed package liquor store would not help alleviate such problems. The appellate record also reveals that Miller testified before the local board that he was a resident of Shipshewana as well as the pastor of the Marion Mennonite Church and that he was speaking not only on his own behalf but also on behalf of the Shipshewana Ministers Association, which is a group of six pastors who meet monthly to discuss significant issues, such as the operation of a package liquor store, in the community. Miller stated:

> We believe that the presence of a package liquor store will have a negative impact on our community and we base our belief on the following reasons. The presence of a package liquor store does not correspond to the value or identity of our community. Second of all, the easier accessibility of alcohol does several things. It brings additional problems. We are currently trying to deal with the traffic and people and vehicles generated by the flea market. With the great variety of vendors and visitors the accessibility of alcohol seems problematic. There are problems that involve minors from [sic] getting fake I.D.'s, purchase [sic] alcohol or persons of age purchasing the alcohol for them. And, last, it contributes to the visiting alcohol problem within LaGrange County. Third, the need to increase police protection. We do not have the necessary funding for full-time police protection. Four, there are pastors that are keenly aware of or have witnessed first hand the devastation and destruction of personal and family life cause [sic] by the use of alcohol. Alcohol is a significant factor related to violent behaviors, child abuse, domestic fighting, murder, etc. Alcohol is frequently a factor in tragic automobile accidents. It is to be recognized that tourism is a major industry in our community. People come to our community to experience the uniqueness of a small town. The majority do not stay overnight, however, others do stay in hotels or bed and breakfast accommodations. The accessibility of alcohol could or would cause potential problems for those who own and operate these establishments. Given the existing and potential problems stemming from the use of alcohol, we ask that you

not approve the license to sell package liquor and alcohol into our community. I have three additional letters from a bishop and two other ministers, who are all in opposition to the approval of this license.

*Record* at 776–778.

The appellate record further reveals that Winford Jones testified before the local board both as a lifelong resident of Shipshewana and on behalf of the Shipshewana Retail Merchants Association. Jones testified that the petitions against the package liquor store were strong evidence of the community's feelings.

At the appeal hearing, the hearing judge took judicial notice of the petitions presented to the local board opposing the granting of the permit and received additional evidence. Jones, the part-owner of both a hardware store and a supermarket in Shipshewana, testified at the appeal hearing that he was the past president of the Shipshewana Retail Merchants Association and was the chairman of the Association's publicity committee and that the Association was opposed to Malone's application for a liquor store permit. When asked why the Association opposed the application, Jones stated:

> Because, number 1, we feel it would not be an asset to the community, being that we try to exhibit a peaceful situation in where we have many tourists come. They want to see the Amish people. They want to see the Mennonite people. They expect to see something different, something that they perhaps don't experience in their home town. We just feel like having alcohol available in town would be a detriment to the community. I have many customers say that they appreciate that Shipshewana does not have a liquor store or a tavern in town.

*Record* at 794–795. When asked if the Association's position was that there was no need for the package store, Jones responded that the Association's position was that there was no desire for it.

Tim Lichte, a Mennonite minister and director of Menno–Hof, a visitor's center in Shipshewana, testified at the appeal hearing about the geography and other characteristics of Shipshewana and the surrounding community. He testified, among other things, that it is a rural agricultural community with a large population of Amish people who live in small homes, the majority of which have no electricity. The area includes a horse racing operation and stables, a number of older buildings which house small businesses related to tourism, an agricultural elevator where horse auctions attended by almost one million people per year are held on Fridays, and a flea market with some 1100 vendors. The only traffic control light is a blinking stop sign at a four-way stop. Other than a small Subway outlet located inside a convenience store, there are no fast-food franchises in Shipshewana. Although there is a blacksmith as well as a number of carriage makers in the community, there are no large retail chain stores such as Wal–Mart.

Lichte further testified that perhaps seventy-five percent of the residents of Newberry Township have an Amish or Mennonite background. He stated that, although the Amish and Mennonites share the same theology and basic beliefs, the Amish have a more visible presence in the community because of their unique dress, forms of transportation, and lifestyle. Lichte explained that Menno–Hof is a visitor's center that was built by the Mennonite and Amish community to communicate to the public accurately, truthfully, and categorically exactly who, as a people, they are. He stated that they were concerned with authenticity. He further stated that the Amish and Mennonite people in Shipshewana have to acknowledge that they are noted for being good cooks and craftsmen, but that they would prefer that the world perceived them to be a "people of faith." *Record* at 808. When asked to comment on "how the availability of alcoholic beverages squares with his view or his perception of Shipshewana", Lichte stated:

> My perception is that we have the opportunity to offer the world something that is unique in terms of viewpoint of life and lifestyle. It's somehow important for us to be authentic and to portray ourselves and our community in such a way that is accurate. And, we believe that having an establishment on the north side of town

where perhaps half of our visitors come past, that's the first thing they see upon arrival into to [sic] town after they've past [sic] hundreds of Amish farms, that the first establishment that they see is an alcohol outlet. It is not consistent with our teaching of abstinence of alcohol. And so, for us to somehow suggest that that is part of who we are in the community, recognizing that all residents of Shipshewana are not Amish or Mennonite, but certainly the largest percentage are.

*Record* at 810.

Lichte made clear at the appeal hearing that, while Amish and Mennonite teachings require that members of their faith abstain from alcohol, they do not judge or condemn others who use alcohol.

During the course of the appeal hearing, the hearing judge received several exhibits into evidence, including exhibit seven, a letter signed by leaders of the Shipshewana Amish community who were opposed to the sale of alcohol in their community.

Following the hearing, the hearing judge determined that the application should be denied and issued proposed findings of fact and conclusions of law. The Commission thereafter affirmed the hearing judge's determination, and Malone sought judicial review.

After reviewing the parties' briefs and entertaining oral argument, the trial court entered extensive findings of fact and conclusions of law and affirmed the Commission's decision denying Malone's application for the permit.

### 1.

Malone argues that the Commission did not act in a religiously neutral manner in denying its application. Malone claims that the Commission endorsed the religious beliefs of the Amish and Mennonite majority and entangled itself in the affairs of those faiths because, in denying the application for the permit, the Commission relied entirely upon Amish and Mennonite religious tenets and beliefs. Malone also argues that the Commission effectively ceded its authority to members of the Amish and Mennonite community by giving them the power to veto

permit applications in the Shipshewana area. According to Malone, the Commission's conduct violated both the Establishment Clause of the United States Constitution and the Freedom of Religion Clause contained in Article I, § 4 of the Indiana Constitution. The Freedom of Religion Clause provides:

> No preference shall be given, by law, to any creed, religious society, or mode of worship; and no person shall be compelled to attend, erect, or support any place of worship, or to maintain any ministry, against his consent.

Except as otherwise provided in Title 7.1 of the Indiana Code, the Commission has discretion to issue or deny an application for a retail liquor permit. Ind.Code Ann. § 7.1–3–19–1 (West 1982); *Indiana Alcoholic Beverage Comm'n v. State ex rel. Harmon,* 269 Ind. 48, 379 N.E.2d 140 (1978). The Commission may investigate an application for such a permit in whatever manner it deems best and may grant or refuse the application "as it deems the public interest shall be served best." IC § 7.1–3–19–10; *Harmon,* 379 N.E.2d 140.

In determining the desirability of a potential geographical location for a new permit, the Commission, pursuant to the Indiana Administrative Code, may consider several factors. 905 IAC 1–27–4 provides in pertinent part:

> The commission upon application for a new ... permit, shall also investigate the desirability of the permit in regard to the potential geographical location of said permit. In making this determination, the commission may consider, but is not limited to the following factors:
>
> (a) The need for such services at the location of the permit.
>
> (b) The desire of the neighborhood or the community to receive such services.
>
> (c) Impact of such services on other business in the neighborhood or community.
>
> (d) Impact of such services on the neighborhood or community.

The Commission must deny an application for a permit when a majority of the members of a local board recommend that the permit

not be granted unless the commission determines, after *de novo* review, that to follow the recommendation would be:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

(2) contrary to a constitutional right, power, privilege, or immunity;

(3) in excess of, or contrary to, statutory jurisdiction, authority, limitations or rights;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

IC § 7.1–3–19–11(a) (West Supp.1996); *Taylor Drug Stores, Inc. v. Indiana Alcoholic Beverage Comm'n,* 497 N.E.2d 932 (Ind.Ct. App.1986).

▮▮▮▮ Judicial review of an administrative decision is limited to determining whether the agency lacked subject matter jurisdiction or employed improper procedures or whether the decision was unsupported by substantial evidence, was arbitrary or capricious, or was in violation of a constitutional, statutory, or legal principle. *Indiana Alcoholic Beverage Comm'n v. Edwards,* 659 N.E.2d 631 (Ind.Ct. App.1995). The court must review the record of the proceedings in the light most favorable to the administrative proceedings and cannot reweigh the evidence. The party asserting the invalidity of the agency action bears the burden of establishing its invalidity. *Id.* When reviewing a decision of an administrative agency, appellate courts stand in the same position as the trial court. *State Bd. of Registration For Land Surveyors v. Bender,* 626 N.E.2d 491 (Ind.Ct.App.1993).

In *County of Allegheny v. American Civil Liberties Union,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), the United States Supreme Court discussed the meaning of the Establishment Clause, stating:

In the course of adjudicating specific cases, this Court has come to understand the Establishment Clause to mean that government may not promote or affiliate itself with any religious doctrine or organization, may not discriminate among persons on the basis of their religious beliefs and practices, may not delegate a governmental power to a religious institution, and may not involve itself too deeply in such an institution's affairs.

\* \* \* \* \* \*

In *Lemon v. Kurtzman,* [403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)], the Court ... focus[ed] on three "tests" for determining whether a government practice violates the Establishment Clause. Under the *Lemon* analysis, a statute or practice which touches upon religion, if it is to be permissible under the Establishment Clause, must have a secular purpose; it must neither advance nor inhibit religion in its principal or primary effect; and it must not foster an excessive entanglement with religion.

*Id.* at 590–592, 109 S.Ct. at 3099–3100.

▮▮▮▮ The trial court in this case properly concluded that the Commission's decision was consistent with the three-part *Lemon* test [1] and that there was no violation of the Establishment Clause. First, there were sufficient legitimate secular reasons for denial of the permit. There was ample evidence before the Commission that the issuance of the permit would detract from the uniqueness of the Shipshewana community and would detrimentally impact the community with regard to economic and social factors. Second, the principal or primary effect of the Commission's action was not to advance or endorse the Amish or Mennonite religions, and in denying the application for the permit, the Commission did not delegate its governmental power to a religious institution. Rather, the Commission merely properly

---

1. While some justices of the United States Supreme Court have expressed dissatisfaction with the *Lemon* test as the primary test to be used in Establishment Clause cases, *see, e.g., Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet,* 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994) (O'Connor, J., concurring in part, and Scalia, J., dissenting); *County of Allegheny,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (Kennedy, J., concurring in part and dissenting in part, and O'Connor, J., concurring in part), the basic principles set forth in *Lemon* remain valid. *See Board of Educ. of Kiryas Joel Village Sch. Dist.,* 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546 (Blackmun, J., concurring).

considered the factors set forth in 905 IAC 1–27–4, including the desire of the community to receive the proposed services. The views of members of the Shipshewana community, regardless of their motivation, were entitled to be given substantial weight. *See Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982). Third, it cannot be said that the Commission fostered an excessive entanglement with religion merely by considering community sentiment and fulfilling its duty to consider those factors contained in 905 IAC 1–27–4. In addition, our review of the record reveals no preference given, by virtue of the Commission's action in denying the permit, to the Amish or Mennonite religions. Accordingly, we conclude that the Commission's conduct did not violate either the Establishment Clause of the United States Constitution or the Freedom of Religion Clause of the Indiana Constitution.

### 2.

Malone argues that the Commission's conclusion that no need exists for a package liquor store in Shipshewana was arbitrary and capricious, unsupported by substantial evidence, and contrary to law. It also argues that the Commission's conclusion that a package store would detract from the character of Shipshewana was unsupported by substantial evidence.

 The substantial evidence standard is met if a reasonable person could conclude that the evidence and the logical inferences therefrom are of such a substantial character and probative value as to support the administrative determination. *Edwards*, 659 N.E.2d 631. An administrative decision is contrary to law if any statute, constitutional provision, legal principle, or rule of substantive or procedural law has been violated. *Mills v. Princeton Mining Co.*, 133 Ind.App. 486, 183 N.E.2d 359 (1962).

 The Commission properly considered all of the factors set forth in 905 IAC 1–27–4, including the need for a package liquor store, before denying Malone's application. A reasonable person could conclude that the evidence and the logical inferences therefrom presented at the hearings were of such a substantial character and probative value as to support the Commission's determinations that there was no need for a package liquor store in Shipshewana and that a package liquor store would detract from the character of the community. In addition, we are unpersuaded by Malone's argument that the Commission's determination with regard to the need for a package liquor store in Shipshewana is contrary to law. The Commission's decision was supported by substantial evidence and was not arbitrary, capricious, or contrary to law.

### 3.

 The intervenors, Kevin Lambright, Winford Jones, Brad Miller, and the Shipshewana Retail Merchants Association, claim that, because Malone's Establishment Clause arguments are completely devoid of plausibility and because Malone's appeal amounts to nothing more than an invitation for this court to reweigh the evidence, they are entitled, pursuant to Appellate Rule 15(G), to recover from Malone the fees they have incurred in defending this appeal. That rule states:

> If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten percent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution.

Ind.Appellate Rule 15(G).

The intervenors also claim that they are entitled, pursuant to Ind.Code Ann. § 34–1–32–1(b)(3) (West Supp.1996), to an award of attorney fees because Malone has engaged in procedural bad faith by misstating the record and being argumentative in the statement of facts presented to this court.

 A discretionary award of damages may be proper when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Orr v. Turco Mfg. Co., Inc.*, 512 N.E.2d 151 (Ind.1987). Because of the potential chilling effect upon the exercise of the right to appeal, an appellate tribunal must use extreme restraint when exercising its discretionary power to award damages on

appeal. *Id.* Accordingly, punitive sanctions may not be imposed to punish lack of merit unless the appellant's contentions and argument are utterly devoid of all plausibility. *Id.* Because we cannot say that Malone's arguments are utterly devoid of all plausibility, an award of damages pursuant to Appellate Rule 15(G) would be inappropriate.

 Under the circumstances presented in this case, an award of attorney fees pursuant to IC § 34–1–32–1 would also be inappropriate.

> Procedural bad faith on appeal is present when a party flagrantly disregards the form and content requirements of the Rules of Appellate Procedure, omits and misstates relevant facts appearing in the record, and files briefs appearing to have been written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. However, conduct can constitute procedural as opposed to substantive bad faith even though the objectionable conduct falls short of being "deliberate or by design." It depends upon the circumstances of the given case.

*Watson v. Thibodeau,* 559 N.E.2d 1205, 1211 (Ind.Ct.App.1990) (citations omitted). We do not find such procedural bad faith in this case.

Judgment affirmed.

CHEZEM, J. concurs.

SULLIVAN, J. concurs as to Parts 1 and 2 and concurs in result as to Part 3.