**AD CRAFT, INC., Appellant–Petitioner,**

**v.**

**BOARD OF ZONING APPEALS OF EVANSVILLE AND VANDERBURGH COUNTY, Appellee–Respondent.**

No. 82A01–9705–CV–146.

Court of Appeals of Indiana.

March 27, 1998.

Rehearing Denied May 29, 1998.

---

Leslie C. Shively, Robert R. Faulkner, Shively and Kent, Evansville, for Appellant–Petitioner.

D. Timothy Born, Shawn M. Sullivan, Lacey, Terrell, Annakin, Heldt & Baugh, Evansville, for Appellee–Respondent.

## OPINION

NAJAM, Judge.

### FACTS AND PROCEDURAL HISTORY

In 1986, Ad Craft, Inc. ("Ad Craft"), on behalf of its customer Citizens Realty, obtained a Zoning Use Permit from the Area Plan Commission of Evansville and Vanderburgh County (the "APC") to erect a sign and to place a new face on an existing sign. Several years later, Citizens Realty merged with EMGE Realty and began doing business as EMGE/Citizens Realty ("EMGE"). After the merger, EMGE directed Ad Craft to change the signs to reflect the new entity. Ad Craft changed the signs by removing the face plates from the existing sign structures and replacing them with new face plates bearing the new name and logo. The size, dimensions, shape and placement of the two signs did not change.

After the APC discovered the changes in the signs, it sent a letter informing EMGE that it would need to obtain a Zoning Use Permit for the signs. EMGE notified Ad Craft, which later appealed the APC's decision to the Board of Zoning Appeals ("BZA"). The appeal was heard on four separate occasions. At the fourth hearing, held January 18, 1996, the BZA voted six-to-one to uphold the APC's decision. However, the BZA did not issue its decision in writing [1] until March 21, 1996.

---

1. Case law refers to the "decision in writing" as "findings." See Ripley County Bd. of Zoning v. Rumpke of Indiana, 663 N.E.2d 198, 205 (Ind.Ct. App.1996) trans. denied.

Meanwhile, Ad Craft filed a Verified Petition for Writ of Certiorari, Judicial Review and Declaratory Judgment on February 16, 1996. After a hearing, the trial court entered special findings in favor of the BZA on July 17, 1996. Ad Craft then filed a motion to correct error, which was denied. Ad Craft now appeals.

We affirm.

## ISSUES

Ad Craft presents several issues on appeal which we consolidate and restate as:

1. Whether the BZA's failure to file its findings in a timely manner requires reversal.

2. Whether the BZA's interpretation of the Evansville, Ind., Code §§ 15.153.06.105 through 15.153.06.112 (the "Sign Ordinance") renders the ordinance unconstitutional as applied.

3. Whether the trial court erred when it failed to address Ad Craft's civil rights claim under 42 U.S.C. § 1983 in its special findings.

## DISCUSSION AND DECISION

### Standard of Review

■ Judicial review of an administrative decision is limited to a determination of whether the agency lacked subject matter jurisdiction or employed improper procedures, or whether the decision was unsupported by substantial evidence or was arbitrary, capricious, or in violation of constitutional, statutory or legal principles. *John Malone Enterprises, Inc. v. Schaeffer*, 674 N.E.2d 599, 605 (Ind.Ct.App.1996). The court must review the record of the proceedings in the light most favorable to the administrative proceeding and cannot reweigh the evidence. *Id.* The party asserting the invalidity of the agency action bears the burden of establishing its invalidity. *Id.*; IND.CODE § 4–21.5–5–14. When reviewing a decision of an administrative agency, appellate courts stand in the same

position as the trial court. *Indiana Alcoholic Beverage Comm'n. v. Edwards*, 659 N.E.2d 631, 632 (Ind.Ct.App.1995).

■ An agency's interpretation of statutes and regulations which it is charged with enforcing is entitled to some weight. *Miller Brewing Co. v. Bartholemew County Beverage Co.*, 674 N.E.2d 193, 200 (Ind.Ct.App. 1996), *trans. denied.* However, courts are charged with the responsibility of statutory construction and, thus, are not bound by the agency's interpretation. *Id.*

### Issue One: Timeliness of Findings

Ad Craft claims that the BZA's two-month delay in making its findings entitles Ad Craft to an automatic reversal. Specifically, Ad Craft contends that it was prejudiced by the lack of information when drafting its complaint. We disagree.

■ Indiana Code § 36–7–4–919(f) requires the board to enter findings within five days of its decision. *Ripley County Bd. of Zoning v. Rumpke of Indiana*, 663 N.E.2d 198, 205 (Ind.Ct.App.1996) *trans. denied.* In order to obtain a reversal, Ad Craft must demonstrate actual prejudice caused by the late filing. *Id.* In this case, the absence of timely agency findings forced Ad Craft to draft its complaint based on its "best guess" of the reasons for the denial of its appeal by the BZA. However, the hearing did not occur until well after the findings had been submitted. Thus, if it had been necessary, Ad Craft had the opportunity to correct any erroneous assumptions by filing an amended complaint. Ad Craft has not shown prejudice, and we conclude that the BZA's delay in entering findings was harmless error.[2] *See id.*

### Issue Two: Sign Ordinance

Next, Ad Craft claims that the BZA improperly interpreted the Sign Ordinance to require a permit in the case of a sign alteration that involves only a "face change" to an existing sign. Specifically, Ad Craft contends that the BZA's interpretation of the

---

**2.** This is especially true when we consider that the usual remedy for failure to file findings is to remand to the BZA with instructions to enter those findings. *See Holmes v. Board of Zoning Appeals of Jasper County*, 634 N.E.2d 522, 525 (Ind.Ct.App.1994).

Sign Ordinance renders it unconstitutional as applied because it regulates the sign's content in violation of the First Amendment of the United States Constitution. The BZA counters that the ordinance is content-neutral as well as a proper time, place, and manner restriction on speech. We agree with the BZA.

## A. Interpretation

■■■■■ When asked to interpret an ordinance, this court will apply the same rules as those employed for the construction of state statutes. *City of Evansville v. Zirkelbach*, 662 N.E.2d 651, 653 (Ind.Ct.App.1996) *trans. denied.* Generally, this court may not construe a statute that is unambiguous. However, where a statute is susceptible to more than one interpretation, it is ambiguous, and the reviewing court must ascertain the intent of the legislative body and interpret the statute to effectuate that intent. *Id.* In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. *State v. Windy City Fireworks, Inc.*, 600 N.E.2d 555, 558 (Ind.Ct.App.1992), *adopted on transfer*, 608 N.E.2d 699 (Ind. 1993).

■■■■ The purpose of the Sign Ordinance is to provide a mechanism for the City of Evansville to protect its interest in aesthetics and traffic safety. *See* Evansville, Ind., Code §§ 15.153.06.105, 15.153.06.110, and 15.153.06.112.[3] It is well settled that the appearance of a city and traffic safety are substantial government goals. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800, 815 (1981). The Sign Ordinance defines "sign" and requires a permit as follows:

(A) A sign means an identification, description, display, or illustration which is affixed to, painted, or represented directly or indirectly on a building or land and which directs attention to [a] product, person, business, or service associated or offered as the primary use, business, or activity on the premises.

(B) *A sign may not be erected or placed in any district with the exception of those signs listed in § 15.153.06.107, until a zoning use permit has been issued by the Area Plan Commission.* Items needed for a zoning use permit include frontal elevation showing size of sign and height above street elevation.

Evansville, Ind., Code § 15.153.06.106(A) & (B) (emphasis added). Section 15.153.06.107 lists the types of signs exempt from the sign ordinance. Exemptions include small noncommercial signs, flags, legal notices, memorial/historical markers, decorative/architectural features of buildings, small real estate signs and traffic signs erected by the municipality. Evansville, Ind., Code § 15.153.06.107.

In addition, § 15.153.06.108, titled "Maintenance and Removal" provides:

(A) *When the* product, person, *business*, or service *that is advertized on a sign is abandoned or altered, the sign must be* removed within 60 days or *altered to depict an existing product, business, or service on the premises.* The owner or tenant of the land is equally responsible for removal or alteration of the sign.

(B) A sign is considered not to be functional when its essential elements are no longer readable, when it is materially obstructed from view, or when a condition of dilapidation exists.

(C) The Building Commissioner has the right of entry to inspect signs to determine whether they are functional. If the Commissioner determines that a sign is not functional, he shall send written notice to

---

**3.** Section 15.153.06.105 states that the purpose of the ordinance is to "provide reasonable standards for signs ... while discouraging their proliferation, disrepair, or garishness." The City's interest in traffic safety is demonstrated in § 15.153.06.110, which prohibits signs "erected at a location where it may interfere with, obstruct the view of, or be confused with a traffic or railroad sign or signal, or oncoming traffic, or where it would present a traffic hazard as determined by the City Urban Transportation Study." It further, prohibits signs that resemble "danger or emergency lights" or use words which would interfere with or confuse traffic or located within eighteen inches of the curb. Further, § 15.153.06.112 specifies the maximum area permitted for on-premise signs in each district and specifies that "they must not be creating a traffic hazard."

the owner of the sign to remove, alter, or repair the sign. If the owner does not comply within 60 days, the Commissioner shall order removal of the sign at the owner's expense.

(emphasis added).

■ Ad Craft contends that when it replaced the old face plates with new face plates that it did not "erect" or "place" a "sign" under § 15.153.06.106 but merely altered the sign as required by § 15.153.06.108(A) and, thus, that a permit was not required. The BZA counters that a "sign" does not include the frame or sign structure and that replacement of the face plate constitutes the "erection" or "placement" of a sign so as to require a permit.

■ In order to determine whether Ad Craft has "placed," "erected" or "altered" a sign we must first consider the meaning of the term "sign." Although the term is defined by the Sign Ordinance, the parties disagree whether the definition includes the sign frame or structure. According to the BZA, the sign frame and structure are not part of the sign because they do not identify, describe, or direct attention to a product, business, or service. We cannot agree.

By its location on the premises, the sign frame or structure of an on-premise sign directs attention to the use, business or activity located there. We conclude that under the Sign Ordinance a sign includes both the message and the sign frame or structure which displays the message. Indeed, the Sign Ordinance regulates physical characteristics including the size of the sign, the height above street elevation, distance from the curb and whether the sign may be illuminated as well as the number of signs that may be placed on the property. Evansville, Ind., Code §§ 15.153.06.106, 15.153.06.110 and 15.153.06.1512. Thus, we cannot agree with the BZA's contention that a sign does not include the frame or structure within which the message is placed.

■ Next, we must determine whether a permit is required when a sign is altered as required by § 15.153.06.108. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the statute and with regard for the legislative intent to carry out the spirit and purpose of the statute. *Detterline v. Bonaventura*, 465 N.E.2d 215, 218 (Ind.Ct.App.1984), *trans. denied; See Zirkelbach*, 662 N.E.2d at 653 (when interpreting ordinance, apply same rules as employed for construction of state statutes). We presume that the legislative body intended its language to be applied in a logical manner consistent with the goals of the statute. *Id.* We also presume that words which appear in the ordinance were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning, absent a clearly manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth*, 590 N.E.2d 154, 157 (Ind.Ct.App.1992), *trans. denied.*

■ Although § 15.153.06.108 does not expressly require a permit for the alteration of a sign, § 15.153.06.106(B) requires a permit when a sign is either "placed" or "erected" unless specifically exempted from the permit requirement in § 15.153.06.107. Since the alteration of an existing sign is not exempt under § 15.153.06.107, the determination of whether a permit is required turns on the definition of the terms "erect," "place" and "alter." Because these terms are not defined by the Sign Ordinance, we must look to their ordinary meaning. The term "erect" is defined as "to raise; construct . . . put together, fashion, assemble . . . set up; establish" and the term "place" means simply "to put in some particular position." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 444, 1000 (1981). The term "alter" means to "change or make different; modify." *Id.* at 37. Thus, an alteration is the substitution of one thing for another, i.e., a replacement. We conclude that when an existing sign is "altered," a different sign is "placed" or "erected" in its stead and that the BZA correctly interpreted § 15.153.06.106(B) to require a permit in this case.

The dissent misconstrues § 15.153.06.108(A) as an exception to the permit requirement. Rather, the plain and ordinary meaning of the terms "alter," "erect," and "place" as used in the Sign Ordinance

establishes that the alteration of an existing sign is tantamount to the erection or placement of a different sign. The dissent provides further support for this conclusion when it describes the face-plate change as a "replacement," i.e., as a substitute for an existing sign.[4] Thus, the BZA's interpretation of the Sign Ordinance gives the dispositive words their plain and ordinary meaning and applies the language in a manner consistent with the goals of the Sign Ordinance.

### B. Constitutionality

■ When a statute is challenged on the basis that it is unconstitutional, we first determine if the case can be disposed of on non-constitutional grounds. *State v. Rendleman,* 603 N.E.2d 1333, 1334 (Ind.1992). Where the constitutional challenge must be addressed, the burden is on the party challenging the constitutionality of the statute, and all doubts are resolved against that party. *Id.* The legislative body has wide latitude in determining public policy and we do not substitute our assessment of the wisdom of a particular statute. *Id.*

■ Commercial speech is protected by the First Amendment of the United States Constitution. *Metromedia,* 453 U.S. at 505, 101 S.Ct. at 2891, 69 L.Ed.2d at 813. The United States Supreme Court has adopted a four-part test to determine the validity of government restrictions on commercial speech. *Id.* at 507, 101 S.Ct. at 2892, 69 L.Ed.2d at 815. First, commercial speech is protected only if that speech concerns lawful activity and is not misleading; second, a restriction on otherwise protected commercial speech is valid only if it seeks to implement a substantial governmental interest; third, the restriction must directly advance that interest; and fourth, the restriction must reach no further than necessary to accomplish its objective. *Id.* (citing *Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 563–566, 100 S.Ct. 2343, 2350–2351, 65 L.Ed.2d 341, 349–351 (1980)). A governmental entity can regulate only certain non-communicative aspects of commercial expression for purposes such as aesthetics and traffic safety. *Id.* at 502, 507,

101 S.Ct. at 2890, 2892, 69 L.Ed.2d at 811, 815. For example, provisions concerning physical characteristics such as spacing, size, height, setback, and lighting are permitted in the regulation of commercial signs. *Burkhart Advertising, Inc. v. City of Auburn,* 786 F.Supp. 721, 730 (N.D.Ind.1991). A regulation which serves purposes unrelated to the content of expression is deemed content neutral, "even if it has an incidental effect on some speakers or messages but not others," and "is justified without reference to the content of the regulated speech." *Price v. State,* 622 N.E.2d 954, 966 (Ind:1993) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2755, 105 L.Ed.2d 661, 675 (1989)).

■ Here, as in *Metromedia,* there can be little controversy over the application of the first and second criteria. There are no allegations that the signs erected by Ad Craft on behalf of EMGE either concern an illegal activity or are misleading. Further, Ad Craft has conceded that both aesthetics and traffic safety are substantial governmental interests.

Still, two questions remain: whether the ordinance, as written and enforced, directly advances the governmental interests in aesthetics and traffic safety and whether the ordinance reaches no further than necessary to accomplish its objectives. Ad Craft concedes that the ordinance is constitutional on its face. However, Ad Craft claims that, as applied, the ordinance is unconstitutional because the BZA maintains that "the message is the sign." *See* Issue Two, part A, discussed *supra.* Specifically, Ad Craft contends that "[i]f the message is the sign, then by definition, BZA is regulating the message." In response, the BZA asserts that the purpose of the permit requirement is to assist in enforcement of the ordinance.

Ad Craft presented no evidence, aside from its bare assertion, that either the APC or the BZA has attempted to regulate content. The BZA, however, presented evidence that the APC has only three investigators to administer an area covering 220

---

4. The term "replacement" is defined as "to place again; put back in place ... supersede ... provide a substitute for." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1103 (1981).

square miles. The BZA also presented evidence that the permit application requirement directly advances the APC's interest in regulating the size and placement of signs by providing notice to the APC of sign changes that its investigators may otherwise miss. Specifically, the permit requirement enables the APC to verify that the alteration of a sign does not affect the physical characteristics of the sign allowed under a previously obtained permit.

Ad Craft attempts to discredit that evidence by emphasizing that this case began when an investigator noted the sign change and sent a letter to EMGE. However, the fact that the BZA sometimes discovers changes without having first received the notice afforded by a permit application does not disprove the overall contentions of the BZA. Further, the regulation of the size and placement of signs is perhaps the only way in which the government can further its interest in aesthetics and traffic safety. *Metromedia*, 453 U.S. at 508, 101 S.Ct. at 2893, 69 L.Ed.2d at 815.

In this case, the alteration of the disputed sign from "Citizens Realty" to "EMGE/Citizens Realty" was innocuous, and the City's interest in regulating this slight alteration was minimal. In other cases, however, the alteration of an existing sign may affect the physical characteristics, aesthetics or placement of the sign on the premises. In such cases, the City's regulatory interest in the alteration is more readily apparent. The BZA acknowledges that the APC is without the authority or discretion to withhold a permit once an application has been submitted and compliance with the sign ordinance has been determined.

Thus, we conclude that the Sign Ordinance, as applied, directly advances the BZA's substantial interest in aesthetics and traffic safety and reaches no further than necessary to accomplish that interest. In addition, we conclude that while having an incidental effect on speech, the permit requirement is content-neutral because its purpose is unrelated to content, and, as we have already noted, the requirement is administered without reference to content. Based

on the evidence presented that the permit requirement is a mechanism to police a valid time, place or manner restriction, we conclude that Ad Craft has failed to demonstrate that the ordinance is unconstitutional as applied.

### Issue Three: Civil Rights Claim

Finally, Ad Craft claims that the trial court erred when it failed to address its civil rights claim under 42 U.S.C. § 1983 in its special findings.[5] The BZA counters that the trial court was not required to address this issue because 42 U.S.C. § 1983 is inapplicable if the ordinance is constitutional.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The BZA is correct that this statute applies only if the trial court finds that the BZA has deprived Ad Craft of a "right, privilege, or immunity secured by the [United States] Constitution." Therefore, we conclude that the trial court did not err when it did not address this claim in its special findings because 42 U.S.C. § 1983 was inapplicable to the case based on the evidence produced at trial.

### CONCLUSION

The BZA's failure to timely file its findings of fact and conclusion of law was harmless error. Further, the BZA correctly applied the ordinance as written, and Ad Craft failed to prove that the BZA unconstitutionally attempted to control the content of commercial speech. Finally, we conclude that the trial court did not err by failing to address the civil rights claim in its special findings.

Affirmed.

**5.** Ad Craft has not presented cogent argument      concerning the trial court's alleged error.

RILEY, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I respectfully dissent as to the majority's conclusion that Ad Craft's replacement of the old face plates with new face plates constitutes an "erection" or "placement" of a sign in accordance with Evansville, Ind., Code § 15.153.06.106(A) and (B).

As the majority notes, the provisions of § 15.153.06.106(B) require a zoning use permit prior to the erection or placement of a sign. However, § 15.153.06.108, which involves the alteration or removal of a sign, contains no such requirement. Rather, a plain reading of § 15.153.06.108 simply requires the owner of the sign to remove or alter the sign when there is a change in the business name, product or service on the premises.

In the instant case, Ad Craft merely removed and replaced the faceplates to reflect the new entity. Because this amounted only to an alteration of the message of an existing sign and not a "placement" or "erection" of a sign as contemplated in § 15.153.06.106(B), Ad Craft was not required to obtain a permit under the ordinance. To require otherwise, would amount to the regulation of commercial expression which the BZA acknowledges that it may not do. Furthermore, because I would reverse on the basis that Ad Craft was not required to obtain a permit, I do not believe that this court is required to address Ad Craft's constitutional arguments. *See Bayh v. Sonnenburg*, 573 N.E.2d 398, 402 (Ind.1991) (appellate court may not decide a party's constitutional question when the decision may rest upon a nonconstitutional basis), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992). Because I dissent with respect to issue II, I am compelled to concur with respect to Issues I and III of the majority opinion.